**PRESTON GATE, LP f/k/a Preston Partners, LP and LTS Group, Inc., Appellants**

v.

**Mark A. BUKATY and Network Multi–Family Security Corporation, Appellees.**

No.  05–06–00054–CV.

Court of Appeals of Texas, Dallas.

March 25, 2008.

---

Steven D. Goldston, Kenneth B. Chaiken, Chaiken & Chaiken, P.C., Dallas, TX, for Appellant.

Tracey E. Gajak, Sullivan, Parker & Cook, LLC, Dallas, TX, for Appellee.

Mark A. Bukaty, Dallas, TX, pro se.

Before Justices MORRIS, BRIDGES, and O'NEILL.

## OPINION

Opinion by Justice MORRIS.

In this appeal, Preston Gate, LP f/k/a Preston Partners, LP and LTS Group, Inc. assert the trial court erred in granting take-nothing summary judgments on their tort claims against Network Multi–Family Security Corporation and its attorney, Mark A. Bukaty. They argue numerous genuine issues of material fact were raised by the summary judgment evidence. Concluding appellants' issues lack merit, we affirm the trial court's judgment.

### I.

In 2003, Bukaty filed a lawsuit on Network's behalf against "LTS Group, Inc. d/b/a Preston Gate LP, f/k/a Preston Partners, LP." The 2003 lawsuit attempted to recover on a debt owed for construction services rendered by Network. Network's pleading in the 2003 lawsuit listed an address on Luther Lane in Dallas, Texas as LTS's registered office. Over three years earlier, however, LTS filed a document with the Secretary of State changing its registered office from the Luther Lane address to one on Dallas Parkway.

Unable to serve LTS at the Luther Lane address, Bukaty obtained alternate service on LTS through the Secretary of State. The trial court ultimately rendered a default judgment against LTS. After the default judgment became final, Bukaty served LTS with a writ of execution at its current registered office on Dallas Parkway in Dallas. Bukaty also filed an abstract of judgment against "LTS Group, Inc. dba Preston Gate, LP fka Preston Partners, LP." As a result, property owned by Preston Gate was encumbered by the resulting judgment lien even though Network's judgment was solely against LTS. Despite Preston Gate's request, appellees refused to remove the judgment lien from Preston Gate's proper-

ty. Only after the trial court granted LTS's bill of review and vacated the underlying default judgment did appellees file releases of the judgment lien.

LTS then brought the present lawsuit against appellees for abuse of process and conspiracy. Preston Gate intervened in LTS's lawsuit asserting claims against appellees for slander of title and filing a fraudulent lien under section 12 of the Texas Civil Practice and Remedies Code. Appellees filed traditional and no-evidence motions for summary judgment on all claims asserted against them. The trial court rendered summary judgments in appellees' favor ordering appellants take nothing by their claims. This appeal followed.

### II.

■ Where, as here, the trial court does not specify the grounds on which the summary judgment was granted, we must affirm if any of the grounds specified in the motion have merit. *See Provident Life & Acc. Ins. Co. v. Knott,* 128 S.W.3d 211, 216 (Tex.2003). Because appellees presented both no-evidence and traditional grounds, we first address appellants' challenges to appellees' no-evidence summary judgment motions. *See Ford Motor Co. v. Ridgway,* 135 S.W.3d 598, 600 (Tex.2004).

■ In a no-evidence motion for summary judgment, the non-movant has the burden of presenting evidence that raises a genuine issue of material fact on the challenged elements. *See* TEX.R. CIV. P. 166a(i). We review a no-evidence motion for summary judgment under the same legal sufficiency standard used to review a directed verdict. *King Ranch, Inc. v. Chapman,* 118 S.W.3d 742, 750–51 (Tex. 2003). Our inquiry focuses on whether the non-movant produced more than a scintilla of probative evidence to raise a fact issue

on the challenged elements. *See id.* at 751.

■ We begin our analysis with Preston Gate's challenges to appellees' no-evidence summary judgments on its slander of title claim. To succeed in an action for slander of title, a party must allege and prove that the defendant, with legal malice, uttered and published disparaging words about plaintiff's title to property that were false and resulted in the loss of a specific sale. *Marrs & Smith P'ship v. D.K. Boyd Oil & Gas Co., Inc.,* 223 S.W.3d 1, 20 (Tex.App.-El Paso 2005, pet. denied). Legal malice in this context means the conduct complained of must have been deliberate and without reasonable cause. *Duncan Land Expl., Inc. v. Littlepage,* 984 S.W.2d 318, 332 (Tex App.-Fort Worth 1998, pet. denied). Preston Gate focuses on the filing of the abstract of judgment and appellees' later refusal to remove the resulting judgment lien as the basis for this claim. It asserts these acts when combined with appellees' filing of the 2003 collection suit solely against LTS, appellees' service of the 2003 lawsuit on LTS at a former registered office address, and Bukaty's later request for a writ of execution that was served on LTS at its correct registered office address is sufficient circumstantial evidence to create a fact issue on the legal malice element of its claim.

■ To the extent Preston Gate relies on appellees' filing of the collection lawsuit, attempted service on LTS at the former registered office address, and later service of the writ of execution at the correct registered office address, it has not explained, and we fail to discern, how this evidence would support a finding that appellees filed the abstract of judgment with legal malice. Importantly, the abstract of judgment identified "LTS Group, Inc dba Preston Gate, L.P. fka Preston Partners LP" as the judgment debtor. This is exactly the same entity against which Network obtain the default judgment. In other words, the basis for the abstract of judgment was the underlying default judgment. Preston Gate has not presented any summary judgment evidence that the mere filing of the abstract based on an existing default judgment was unreasonable.

■ We have also reviewed Preston Gate's evidence establishing that its demand to remove the abstract of judgment with respect to Preston Gate was refused. This evidence consists of an assertion in a letter from Preston Gate's attorney to Bukaty that Network's default judgment was solely against LTS and not Preston Gate and that the two were distinct entities. However, other than the attorney's unsupported assertion, there is nothing in the record that indicates appellees knew Preston Gate was a separate legal entity rather an assumed name under which LTS was doing business. Moreover, Preston Gate's own summary judgment evidence indicates that Network wrote a statement of account addressed to "LTS Group, Inc. d/b/a Preston Gate, LP f/k/a Preston Partners, LP." Network also wrote letters to LTS Group, Inc. about the construction contract with Preston Partners, LP. In such circumstances, Preston Gate's evidence failed to raise a genuine issue of fact on the legal malice element needed for its slander of title claim. Based on the evidence before it, the trial court did not err in granting appellees' no-evidence summary judgments on this claim.

The summary judgment evidence on Preston Gate's fraudulent lien claim is similarly deficient. To establish a fraudulent lien under section 12 of the Texas Civil Practice and Remedies Code, a plaintiff must show the defendant made, presented or used a document with knowledge that it was a fraudulent lien, intended the docu-

ment be given legal effect, and intended to cause plaintiff physical injury, financial injury, or mental anguish. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 12.002(a) (Vernon 2002). Although appellees challenged all three of these elements in their no-evidence summary judgment motions, we focus on the last element addressing appellees' intent.

■ In a single paragraph, Preston Gate asserts that appellees' intent to cause it financial injury by filing the abstract of judgment is "self-evident" based on appellees' failure to remove the lien as Preston Gate's attorney demanded. We do not agree. As noted above, the evidence before the trial court established that the abstract of judgment was filed and based on the existing default judgment obtained by appellees. That judgment was based, in turn, on the contract that Preston Gate had executed with Network. Because the record is devoid of any evidence that appellees intended to cause Preston Gate financial injury when it filed the abstract of judgment, the trial court properly granted summary judgment on this claim.

Having concluded the trial court did not err in granting appellees' no-evidence summary judgment motion on Preston Gate's claims, we need not address the grounds presented in appellees' traditional summary judgment motion. We now turn to the trial court's take-nothing summary judgment on LTS's abuse of process and conspiracy claims.

■ The elements of an abuse of process claim include (1) an illegal, improper, or perverted use of the process, neither warranted nor authorized by the process, (2) an ulterior motive or purpose in exercising such use, and (3) damages as a result of the illegal act. *Graham v. Mary Kay Inc.*, 25 S.W.3d 749, 756 (Tex. App.-Houston [14th Dist.] 2000, pet. denied). To constitute an abuse of process,

the process must have been used to accomplish an end which is beyond the purview of the process and which compels a party to do a collateral thing which he could not be compelled to do. *Baubles & Beads v. Louis Vuitton, S.A.*, 766 S.W.2d 377, 379 (Tex.App.-Texarkana 1989, no writ). The critical aspect of this tort is the improper use of the process after it has been issued. *Bossin v. Towber*, 894 S.W.2d 25, 33 (Tex. App.-Houston [14th Dist.] 1994, writ denied). Stated another way, the original issuance of process is justified, but the process itself is later used for a purpose for which it was not intended. *Hunt v. Baldwin*, 68 S.W.3d 117, 130 (Tex.App.-Houston [14th Dist.] 2001, no pet.). When the process is used for the purpose for which it was intended, even though accomplished by an ulterior motive, no abuse of process has occurred. *See id.*

■ Here, LTS argues appellees intentionally provided false information about LTS's registered agent address so they could obtain a default judgment against LTS without its knowledge. However, in order to establish appellees' use of service was illegal, improper, or perverted, it must first present evidence creating a fact issue on whether appellees knew the information they provided was false. To establish appellees' knowledge, LTS relies on the change of registered agent address filed with Secretary of State, Bukaty's own file which contained LTS's business address, and Bukaty's request, after obtaining the default judgment, for a writ of execution to issue to the correct registered agent address. After reviewing the evidence before us, we conclude it is insufficient to establish appellees used service of process for an illegal, improper or perverted process. LTS provides no discussion or authority, and we have found none, that would impute appellees with knowledge of the information in the records of the Sec-

retary of State. Moreover, there is nothing in the summary judgment evidence that indicates Bukaty's file contained the correct registered agent address. The only other evidence LTS puts forth to support its claim that appellees used information they knew was false when serving LTS is the fact that Bukaty later used LTS's correct registered agent address when requesting the writ of execution. The writ was requested at least four months after Bukaty requested substituted service. We conclude that this evidence, without more, is no more than a scintilla of evidence that appellees knew the correct registered address at the time they sought service on LTS. Because there is no summary judgment evidence establishing that appellees improperly used the process after it was issued, the trial court did not err in granting summary judgment on this claim.

We next address the propriety of granting summary judgment on LTS's civil conspiracy claim. To succeed on a civil conspiracy claim, a party must offer proof of the following elements: (1) two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as a proximate result. *See Tri v. J.T.T*, 162 S.W.3d 552, 556 (Tex.2005). It is a derivative tort and, thus, a defendant's liability for conspiracy is dependent upon his participation in an underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable. *RTLC AG Products, Inc., v. Treatment Equip. Co.*, 195 S.W.3d 824, 833 (Tex.App.-Dallas 2006, no pet.). Appellees moved for summary judgment on this claim on the grounds that there was no evidence of an underlying tort or unlawful conduct or unlawful purpose. Here, the only underlying tort upon which LTS's civil conspiracy claim is

based is abuse of process. Because we have concluded that the trial court properly granted summary judgment in appellees' favor on the abuse of process claim, we conclude that summary judgment on the civil conspiracy claim was also proper.

We affirm the trial court's judgment.