Chuck **DENSON** and **ABCD Auto, Inc., Appellants,**

v.

**DALLAS COUNTY CREDIT UNION and Jennifer Naughton, Appellees.**

No. 05–07–00547–CV.

Court of Appeals of Texas, Dallas.

Aug. 15, 2008.

Rehearing Overruled Sept. 30, 2008.

Eric Roberson, Patrick J. Mulligan, Reid Stewart, Law Office of Patrick J. Mulligan, Dallas, David George, Connelly, Baker, Wotring & Jackson, L.L.P., Houston, for appellants.

Randy Roberts, Blalack & Williams, P.C., Jennifer N. Stephens, Lewis R. Sifford, Sifford, Anderson & Co., P.C., Dallas, for appellees.

Before Justices MORRIS, WHITTINGTON, and O'NEILL.

## OPINION

Opinion by Justice O'NEILL.

This case involves the alleged tortious conduct and breach of contract by appellee Dallas County Credit Union and its president, appellee Jennifer Naughton, against appellant Chuck Denson, the owner of appellant ABCD Auto, Inc. The Credit Union filed both a traditional and no-evidence motion for summary judgment on all claims. Naughton filed a no-evidence summary judgment motion. The trial court granted both summary judgments against appellants, but did not specify the grounds for granting them. On appeal, appellants contend (1) their claims are not barred by the doctrine of illegality; (2) Denson has standing to bring the claim; (3) the trial court erred in granting summary judgment against Naughton; (4) the trial court erred in granting summary judgment in favor of the Credit Union; and (5) the nondelegable-duty doctrine does not apply to this case. We affirm in part and reverse and remand in part.

### Background

Because the facts of the case are well-known to the parties, we only briefly recite the background here. TEX.R.APP. P. 47.1. Appellant Chuck Denson owned ABCD Auto, Inc., a car dealership, which was not licensed to sell cars in Dallas County. In 2003, appellants entered into an agreement with the Credit Union through its alleged agent Otis Chapman [1] in which appellants found cars for the Credit Union's customers, and the Credit Union then financed the loans. The profits from the car sales were split three ways with one-third going to ABCD Auto, Inc., one-third going to Denson personally, and one-third going to Chapman.

---

1. The pleadings and judgments refer to Otis as both "Chapman" and "Chatman." For purposes of this appeal, we will refer to him as Chapman.

Appellants allege that on many of the loans, Chapman told appellants the cars sold for a lower amount when the Credit Union had actually financed the sales for a greater amount. This resulted in appellants receiving their percentage of the profit from the lower amount.

Appellants brought suit against the Credit Union, Naughton as president of the Credit Union, and Chapman. The claims included breach of contract, fraud, assisting in a breach of fiduciary duty, and civil conspiracy. Naughton filed a no-evidence motion for summary judgment, and the Credit Union filed both a traditional and no-evidence motion for summary judgment on appellants' claims. The trial court granted both parties' motions and severed Chapman's claims making the summary judgments final and appealable. This appeal followed.

## Standard of Review

When, as here, the trial court does not specify the grounds on which it granted the summary judgment, we must affirm if any of the grounds specified in the motion have merit. *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003); *Preston Gate, L.P. v. Bukaty*, 248 S.W.3d 892, 895 (Tex.App.-Dallas 2008, no pet.). In a no-evidence motion for summary judgment, the non-movant has the burden of presenting evidence that raises a genuine issue of material fact on the challenged elements. *See* Tex.R. Civ. P. 166a(i). We review a no-evidence motion for summary judgment under the same legal sufficiency standard used to review a directed verdict. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750–51 (Tex. 2003). Our inquiry focuses on whether the non-movant produced more than a scintilla of probative evidence to raise a fact issue on the challenged elements. *Id.* at 751; *Preston Gate, L.P.*, 248 S.W.3d at 896.

To prevail on a summary judgment motion brought under Texas Rule of Civil Procedure 166a(c), a movant must show there is no genuine issue as to any material fact, and it is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *Little v. Tex. Dep't of Criminal Justice*, 148 S.W.3d 374, 381 (Tex.2004); *Schwartz v. Schwartz*, 247 S.W.3d 804, 806 (Tex. App.-Dallas 2008, no pet.). A matter is conclusively established if ordinary minds cannot differ as to the conclusion to be drawn from the evidence. *Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.*, 644 S.W.2d 443, 446 (Tex.1982). A defendant may meet this burden by either: (1) disproving at least one essential element of each theory of recovery, or (2) conclusively proving all elements of an affirmative defense. *Wornick Co. v. Casas*, 856 S.W.2d 732, 733 (Tex.1993). Where a party moves for summary judgment on the grounds of an affirmative defense, such as the illegality of a contract, the movant must expressly present and conclusively prove each essential element of the affirmative defense. *Villanueva v. Gonzalez*, 123 S.W.3d 461, 464 (Tex.App.-San Antonio 2003, no pet.); *see also* Tex.R. Civ. P. 94 (illegality must be pleaded as affirmative defense). After the movant has established a right to summary judgment, the burden shifts to the nonmovant to present evidence creating a fact issue. *Schwartz*, 247 S.W.3d at 806. If the nonmovant fails to create a fact issue, summary judgment is appropriate.

## Naughton No–Evidence Summary Judgment

Appellants assert Naughton, serving as the Credit Union's president, perpetuated a fraud, assisted Chapman in breaching his fiduciary duty, and acted in a conspiracy by misrepresenting sales amounts of vehi-

cles.[2] The trial court granted a no-evidence summary judgment in her favor without specifying the grounds on which it found no evidence. Thus, we may affirm if any of the grounds specified in the motion have merit.

### 1. Fraud

■ To prove fraud, a party must show (1) the defendant made a material misrepresentation, (2) which was false, (3) which the defendant knew was false or made recklessly without knowledge of the truth at the time it was made, (4) and the defendant made the representation with the intention that the party rely on it, (5) and the party acted in reliance on the statement, and (6) it resulted in injury. *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 524 (Tex. 1998).

■ In response to Naughton's second amended no-evidence motion for summary judgment, appellants filed objections, special exceptions, and a fourth submission of evidence in opposition of summary judgment. Specifically, they claim they were damaged by such fraud and cite to paragraphs two through five and ten and eleven of Chuck Denson's third affidavit for support. After reviewing these portions of the affidavit, we conclude appellants failed to produce more than a scintilla of evidence that any fraud resulted in injuries or damages. The cited paragraphs in Denson's affidavit discuss alleged misrepresentations by Chapman, not Naughton. The affidavit also discusses injuries such as loss of personal credit due to the default of floor-planned vehicles for a grand opening sale, which occurred without Denson's vehicles. He stated "I liquidated the vehicles at a loss after receiving this news." While this may be evidence of injury and damages caused by a breach of contract for the grand opening sales, appellants withdrew any such claim against Naughton when they filed their second amended petition. *See* TEX.R. CIV. P. 65 (noting amended pleading supersedes and supplants earlier pleading); *Seung Ok Lee v. Ki Pong Na*, 198 S.W.3d 492, 494 (Tex.App.-Dallas 2006, no pet.). Thus, these statements failed to produce more than a scintilla of probative evidence to raise a fact issue on the challenged element of damages. *See Preston Gate, L.P.*, 248 S.W.3d at 896.

Appellants also provided a chart in their response describing the "alleged area of no evidence" and their "responsive genuine issue of fact." The chart contains a section for fraud, which states "Naughton is liable directly for her fraudulent promises made with no intent to perform that she would insure each loan document was correct before she signed the check, as a co-conspirator for the Fraud of Chapman in each false representation of loan amount. See Genuine Issue number 3, above." This statement is not evidence of any injury or damage caused by her alleged fraud, and appellants citation to Genuine Issue number 3 references back to a portion of their response that has nothing to do with damages or injuries from Naughton's alleged fraud. Rather, this section claims damages caused by an alleged breach of the grand opening sales agreement, which as noted above, do not apply to Naughton. Thus, appellants failed to provide more than a scintilla of evidence to raise a genuine issue of material fact regarding damages or injuries resulting from Naughton's alleged fraud. Accordingly, the trial court properly granted her no-evidence motion for summary judgment on this cause of action.

---

**2.** Although appellants asserted other causes of actions against Naughton in their original petition, we only address those specifically challenged on appeal.

## 2. Conspiracy

To prevail on their conspiracy claim, appellants needed to bring forth evidence of the following elements: (1) two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as a proximate result. *Preston Gate, L.P.,* 248 S.W.3d at 898; *Prospect High Income Fund v. Grant Thornton, L.L.P.,* 203 S.W.3d 602, 616 (Tex.App.-Dallas 2006, pet. denied). Again, appellants cite to the Denson affidavits as evidence. However, a review of the cited evidence reveals no meeting of the minds between Naughton and Chapman to commit any unlawful act. Although he claimed Naughton and Chapman had "private meetings" behind closed doors and Denson was not allowed in the office when the meetings occurred, this is not evidence of a conspiracy. Likewise, nothing in the Hedrick, Vitelea, or Meza affidavits indicates any meeting of the minds between the two parties to commit an unlawful act. These affidavits merely discuss the transactions of cashing checks to pay for automobiles and the loan finance transactions. Because appellants failed to produce more than a scintilla of evidence on at least one element of their conspiracy claim, the trial court properly granted a no-evidence summary judgment on this cause of action.

## 3. Breach of Fiduciary Duty

Appellants asserted a breach of fiduciary duty claim against Chapman individually and Naughton and the Credit Union as joint tortfeasors. Specifically, they claimed Naughton, as a third party, knowingly participated in Chapman's breach of his fiduciary duty; therefore, she became a joint tortfeasor equally liable with him. *See, e.g., Kinzbach Tool Co. v. Corbett–Wallace Corp.,* 138 Tex. 565, 160 S.W.2d 509, 514 (Tex.1942); *Kastner v. Jenkens & Gilchrist, P.C.,* 231 S.W.3d 571, 580 (Tex. App.-Dallas 2007, no pet.) ("When a third party knowingly participates in the breach of a fiduciary duty, the third party becomes a joint tort-feasor and is liable as such"). In her no-evidence summary judgment motion, Naughton alleged "there is no evidence that Defendant Naughton owed a fiduciary duty to Plaintiffs."

Naughton mis-characterizes appellants cause of action as alleging a breach of a fiduciary duty on her part. Appellants, however, have not alleged that she was their fiduciary, but rather that Chapman was their fiduciary and that she knowingly assisted him in breaching his duty. In a no-evidence motion for summary judgment, the movant must state the elements as to which there is no evidence for a claim. TEX.R. CIV. P. 166a(i); *Roventini v. Ocular Sciences, Inc.,* 111 S.W.3d 719, 722 (Tex.App.-Houston [1st Dist.] 2003, no pet.) (noting that the "motion must specify which essential elements of the opponent's claim or defense lack supporting evidence"). Here, although Naughton alleged there was no evidence of a fiduciary duty, she failed to assert there was no evidence as to the elements of appellants' cause of action as pleaded. Naughton failed to assert there was no evidence Chapman breached his fiduciary duty or that she assisted him in breaching his duty. Therefore, the trial court erroneously granted a no-evidence summary judgment on appellants' claim against Naughton as a joint tortfeasor. *See, e.g., Ling, et al. v. BDA & K Bus. Servs., Inc.,* 261 S.W.3d 341 (Tex.App.-Dallas 2008, no pet. h.) (concluding trial court erroneously granted summary judgment when party asserted a breach of the professional standard of care applicable to accountants, but accountants re-characterized party's claim as an implied duty to render legal advice

and failed to address the claims as asserted in the pleadings).

Accordingly, we sustain appellants' issue. The trial court's judgment granting the no-evidence motion for summary judgment on appellants' breach of fiduciary duty claim for Naughton as a joint tortfeasor is reversed. We remand this cause of action for further proceedings.

### Credit Union's Traditional Motion for Summary Judgment

The Credit Union filed a traditional motion for summary judgment contending appellants' claims were barred by the doctrine of illegality because they did not have a car dealer permit in Dallas County at the time of the events in question. It also filed a no-evidence motion for summary judgment challenging each of appellants' causes of action.

Appellants respond the doctrine of illegality does not apply to these facts because the affirmative defense only applies when a contract cannot be performed legally. Further, even if the affirmative defense applies, it would bar only their contract claim against the Credit Union and not their tort claims. They further allege they provided more than a scintilla of evidence to overcome the no-evidence motion for summary judgment. As explained below, we agree with the Credit Union that the doctrine of illegality bars all of appellants' claims.

Illegality is an affirmative defense the Credit Union must conclusively establish to prove it is entitled to judgment as a matter of law. TEX.R. CIV. P. 94; *Signal Peak Enter. of Tex., Inc. v. Bettina Invs., Inc.*, 138 S.W.3d 915, 920 (Tex.App.-Dallas 2004, pet. stricken). Appellants argue because the car sales would have been in full compliance with the law if they had a license, the contract could have been performed legally; therefore, the illegality defense fails. They further contend the Credit Union failed to conclusively establish they could not obtain a license.

A contract to do a thing which cannot be performed without violation of the law violates public policy and is void. *Villanueva*, 123 S.W.3d at 464 (citing *Lewis v. Davis*, 145 Tex. 468, 199 S.W.2d 146 (1947)). The purpose behind this rule is not to protect or punish either party to the contract, but to benefit and protect the public. *Id.* However, a contract that could have been performed in a legal manner will not be declared void, illegal, and unenforceable merely because it may have been performed in an illegal manner or because illegal acts were committed in carrying it out. *Lewis*, 199 S.W.2d at 149.

It is undisputed that appellants did not have a permit to sell cars in Dallas County. Texas Transportation Code section 503.021 states "a person may not engage in business as a dealer, directly or indirectly, . . ., without a dealer general distinguishing number . . . for each location from which the person conducts business as a dealer." TEX. TRANSP. CODE ANN. § 503.021 (Vernon Supp.2008); *see also* TEX. OCC.CODE ANN. § 2301.251(a), (b) (Vernon 2004) (noting unless a person holds a license issued under this chapter, he may not engage in business as a motor vehicle dealer, and the franchised dealer must have both a motor vehicle dealer's general distinguishing number issued under chapter 503 of the transportation code and a license under the occupation code).

An applicant for an original dealer distinguishing number must submit a written application demonstrating he meets the requirements of section 503.032. TEX. TRANSP. CODE ANN. § 503.029 (Vernon Supp.2008). Section 503.032 requires an applicant to demonstrate "that the location for which the applicant requests the num-

ber is an established and permanent place of business." TEX. TRANSP. CODE ANN. § 503.032(a) (Vernon Supp.2008). To constitute an established and permanent place of business, the real property must be either owned by the applicant or be leased to the applicant for a term of at least one year by way of a written agreement. *Id.* § 503.032(a)(1).

Appellants admit they did not have a permit to sell cars in Dallas County, but rather had permits for both Tarrant County and Wood County. They concede they had no legal ability to transact business as an automobile dealer from any location in Dallas County, yet they knowingly and willingly engaged Chapman as their sales agent for the express purpose of selling vehicles at the Credit Union in Dallas County.

■■■ Despite conceding the illegality of their conduct, appellants assert two reasons why they should not be barred from recovery: (1) the sales could have been performed legally, and (2) the defense does not pertain to tort claims. We conclude neither argument has merit.

Appellants rely on *Wade v. Jones,* 526 S.W.2d 160, 163 (Tex.App.-Dallas 1975, no writ) to support their argument that the contract could have been performed legally, but was not. In that case, plaintiff sued for the recovery of the agreed price for a house the plaintiff sold to defendants and moved to their land. A Dallas city ordinance required house movers to be licensed, bonded, and insured and also required a permit for each building moved into the city. *Id.* at 162–63. Defendants alleged the contract was illegal because plaintiff did not obtain a permit from the city to move the house. *Id.* at 163. This Court concluded the illegality of the contract had not been established as a matter of law because the evidence did not show he could not have obtained a permit or that he could not have performed the contract in a legal manner. *Id.*

Similar to *Wade,* appellants assert there is no evidence they could not have obtained a car dealer permit, thus, the contract was capable of being performed legally. We do not find *Wade* controlling under these facts. The issue of illegality was considered within the context of the plaintiff failing to obtain a proper permit. The issue was not whether the plaintiff was properly licensed, bonded, and insured as required by statute. As the Credit Union correctly states, there is a distinction between being legally disqualified to engage in a certain business and the failure to obtain a permit to engage in a single transaction. Further, the evidence shows appellants could not have obtained a license because they had not established a permanent place of business in Dallas County as required under Texas Transportation Code section 503.032(a)(1).

We also conclude appellants' reliance on *Comeaux v. Mann,* 244 S.W.2d 274 (Tex. Civ.App.-Austin 1951, no writ) is misplaced. In that case, Mann sued Comeaux to recover on an oral contract whereby Mann agreed to furnish all labor necessary to make repairs and improvements to a building. Port Arthur had a city ordinance requiring builders to obtain a permit before such improvements could be made to a building. *Id.* at 276. After examining the ordinance, the court concluded sections of the ordinance established that contracts entered into for the repair and improvement of buildings without securing a permit were not declared void or unenforceable. *Id.* In this case, however, the transportation code specifically states that a person may not engage in the business of dealing or selling cars without a license. *See* TEX. TRANSP. CODE ANN. § 503.021; TEX. OCC.CODE ANN. § 2301.251(a), (b). Thus, because the

transportation code specifically disproves of such activities without a license thereby making them void, we find appellants' reliance on *Mann* unpersuasive.[3]

The Credit Union contends the illegality defense applies to these facts and relies on *M.M.M., Inc. v. Mitchell*, 153 Tex. 227, 265 S.W.2d 584 (Tex.1954). In that case, the issue before the court was whether an engineer, who had been issued a license under the statute regulating the practice of professional engineering, was illegally practicing when he contracted and performed services during a year for which he failed to pay the fee to renew his license. The court easily concluded a contract for engineering services rendered by a person prohibited under the statute from rendering them is unenforceable. *Id.* at 586. Under the provisions, the original licensing of an engineer was one thing while the annual certificate renewal was another. *Id.* at 587. Thus, the court concluded the contract, when entered into without the proper license, was illegal because it was incapable of being performed in a legal manner.

The Amarillo Court of Appeals reached a similar conclusion in *Rodriquez v. Love*, 860 S.W.2d 541 (Tex.App.-El Paso 1993, no writ). In that case, appellant brought several causes of action against her insurance company after it allegedly wrongfully cancelled her policy. *Id.* at 542. The insurance company claimed appellant could not recover because her causes of action against it were predicated on her own unlawful act of driving with her license suspended. *Id.* at 543. Evidence showed appellant continued to drive despite receiving notice from the Texas Department of Public Safety that her license had been suspended, which was a clear violation of Texas Revised Civil Statute, article 6687b. *Id.* at 544. The court concluded appellant's wrongful act of violating a statute precluded her causes of action to the extent they stemmed from her arrest.

The common thread of the Credit Union's cases, which we find controlling, is that in situations where public policy concerns have led to a governmentally supervised statutory licensing scheme, courts have consistently held the unlawful and unlicensed participation in such regulated businesses cannot form the basis for recovery. *See, e.g., Ahumada v. Dow Chem. Co.*, 992 S.W.2d 555, 558–59 (Tex.App.-Houston [14th Dist.] 1999, pet. denied) (holding fisherman had no right to recover for damages allegedly suffered when an oil spill prevented them from fishing in a bay because despite having a license to fish, a regulation specifically prohibited fishing in the bay at the time of the spill; therefore, they were not entitled to any recovery); *see also Mitchell*, 265 S.W.2d at 586. To hold otherwise would allow a person to accomplish indirectly what he is prohibited from doing directly and frustrate the public policies behind the legal protections. *See* TEX. OCC.CODE ANN. § 2301.001 (Vernon 2004) ("The distribution and sale of

**3.** Appellants further cite *Corporate Leasing International, Inc. v. Groves*, 925 S.W.2d 734 (Tex.App.-Fort Worth 1996, writ denied). Although that case discusses the concepts of illegality of contract, we conclude the court's discussion is merely dicta, and therefore not binding. *See In re Certain Underwriters at Lloyd's*, 18 S.W.3d 867, 870 (Tex.App.-Beaumont 2000, orig. proceeding) (noting "dictum is an observation or remark made concerning some rule, principle, or application of law suggested in a particular case that is not necessary to the determination of the case" and is not binding as precedent). The real issue of first impression before the court was whether an owner of a dental laser was required to register the equipment with the state regulatory authority where that owner is not in possession of the equipment and is not using the equipment to treat patients. *Id.* at 735. Thus, we do not find this authority persuasive to our analysis.

motor vehicles in this state vitally affects the general economy of the state and the public interest and welfare of its citizens. This chapter shall be liberally construed to accomplish its purposes, including the exercise of the state's police power to ensure a sound system of distributing and selling motor vehicles through: (1) licensing and regulating manufacturers, distributors, converters, and dealers of motor vehicles; . . . .").

Appellants argue allowing the Credit Union to prevail on the illegality defense allows it to walk away with a windfall. Although this may be true under these facts, to hold otherwise would allow individuals to indirectly profit from a business they are directly prohibited from engaging in unless properly licensed by statute. This we will not do. The transportation code clearly prohibits a dealer from selling cars unless properly licensed. To conclude that appellant could have performed the contract legally if properly licensed nullifies the statutes. We recognize there is nothing inherently illegal about selling cars in Dallas County; however, under these facts, the transaction of selling the cars was illegal because on the day of the transactions, appellants did not have the statutory required license. Thus, we conclude appellants' breach of contract claim is barred by the illegality defense. Accordingly, the trial court properly granted summary judgment on this claim.

We must now determine whether the illegality defense defeats their remaining tort claims. Appellants assert "while Texas courts have recognized that illegality can be a defense to contract claims, they have not recognized it as a defense to tort claims." They fail to cite to any authority supporting their position and contend the authority relied on by the Credit Union concerns only illegality barring contract claims. We disagree.

The Credit Union relies on case law recognizing the long-standing unlawful acts rule in Texas, which states that no action may be predicated upon an admittedly unlawful act of the party asserting it. *See Macias v. Moreno,* 30 S.W.3d 25, 29 (Tex.App.-El Paso 2000, pet. denied); *Stevens v. Hallmark,* 109 S.W.2d 1106, 1106 (Tex.Civ.App.-Austin 1937, no writ) ("A person cannot maintain a cause of action if, in order to establish it, he must rely, in whole or in part, on an illegal or immoral act or transaction to which he is a party."). We agree with the Credit Union that the rule applies and bars appellants' claims arising in tort because they are inextricably intertwined with their illegal contract to sell automobiles in Dallas County without a license. *See Villanueva,* 123 S.W.3d at 463–64 (holding claims for breach of fiduciary duty and fraud failed because they arose out of an illegal contract that violated the occupation code); *see also Saks v. Sawtelle, Goode, Davidson, & Troilo,* 880 S.W.2d 466, 469 (Tex. App.-San Antonio 1994, writ denied) ("It may be assumed, as undisputed doctrine, that no action will lie to recover a claim for damages, if to establish it the plaintiff requires aid from an illegal transaction, or is under the necessity of showing or in any manner depending upon an illegal act to which he is a party.") (citing *Gulf v. Johnson,* 71 Tex. 619, 9 S.W. 602, 603 (Tex. 1888)). Thus, we need not address appellants' arguments regarding their tort claims against the Credit Union.

Because we have concluded the trial court properly granted the Credit Union's summary judgment as a matter of law, we need not address the no evidence grounds raised in the motion or appellants' remaining arguments. *Villanueva,* 123 S.W.3d at 467. Thus, appellant's arguments regarding the Credit Union are overruled. Ac-

cordingly, the trial court's judgment in favor of the Credit Union is affirmed.

### Conclusion

The trial court's judgment in favor of the Credit Union is affirmed. The trial court's no-evidence summary judgment in favor of Naughton is reversed and remanded as to appellants' claim for breach of fiduciary duty as a joint tortfeasor, but is in all other respects affirmed.