Opinion issued April 26, 2012



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-11-00129-CV

———————————

Andy Gray, Appellant

V.

Entis
Mechanical Services, LLC, Appellee



 



 

On Appeal from the 61st District Court

Harris County, Texas



Trial Court Case No. 2009-69921

 



 

MEMORANDUM OPINION

This is an
appeal from a judgment following a bench trial awarding damages to appellee
Entis Mechanical Services, LLC under the fraudulent-lien statute.  Appellant Andy Gray disputes that there is
evidence that the lien at issue is fraudulent, or of his intent to cause harm
to Entis by filing the lien.  We affirm
the trial court’s judgment.

TRIAL TESTIMONY

Appellant Gray, owner of Lighthouse
Electric, has worked as an electrical subcontractor for Entis on various
jobsites, including at some of the twelve facilities (hospitals and retirement
centers) operated by Health Services Management Services of Texas (HSMTX).[1]  Work performed at HSMTX’s Tomball Retirement
Center located on Medical Complex Drive is at issue in this dispute.  

Entis’s owners, Doug Haffner and
Jason Bice, both testified that they had an agreement with Gray that they would
pay his bill for electrical services when they were paid by the property owner
for the location where the work was performed. 
They also both testified that this arrangement was common in the
construction industry.  Gray was not
asked specifically about that arrangement at trial, but he did testify that
“[a]bout 90 percent of the time” Entis paid him “within 30 days from when” he
billed them for work.  

Before November 2008, Entis did a
lot of work for HSMTX entities. 
Following Hurricane Ike in September 2008, Entis began having problems
getting HSMTX entities to pay their bills for work at the facilities.  HSMTX was one of Entis’s larger clients and
owed Entis a significant amount of money. 
According to the testimony of Haffner, Bice, and Mickey Austin (the
maintenance supervisor at HSMTX’s Tomball Retirement Center), all the HSMTX
entities stopped hiring Entis to work at their facilities at some point in
November 2008.    

The lien at issue in this case related
to electrical work that Gray performed on December 16, 2008 at HSMTX’s Tomball
Retirement Center.  Haffner and Bice
testified that Entis did not hire Gray to work in December 2008 at any HSMTX
facility.  Consistent with this
testimony, Austin testified that he personally called Gray on behalf of HSMTX and
hired him directly to do the electrical work because no HSMTX entity was
authorized to hire Entis in December 2008. 
Gray disputed this version of events and testified that Haffner called
him about doing this electrical work on December 16, 2008, and that he
performed the work as a subcontractor for Entis, not for HSMTX directly. 

Because HSMTX had fallen behind on
payments, Entis filed liens on some of HSMTX properties to protect itself, its
suppliers and subcontractors, including Gray. 
Gray asked to have his name added to these liens to secure amounts he
had not been paid by Entis, which Entis refused.  Gray testified that he then tried a different
route to compel Entis to add his name to its HSMTX liens.  Entis had hired Gray’s neighbor, who owns
Compass Security, to provide nighttime security watch at some of its jobsites.  Gray knew that Entis was trying to contact
Compass’s owner to obtain information needed to report payments for security
services on a Form 1099.  Gray asked
Compass’s owner to withhold the information Entis needed for its tax filings so
that Gray could use that information to bargain for Entis’s agreement to name
Gray in its liens.  Gray also testified
that he tried to file a criminal theft-of-services complaint against Entis with
the sheriff’s department, but that “they wouldn’t allow me to do it, because it
was over $10,000.”   

Gray eventually sent a bill for
$143.89 to Entis for the December 16, 2008 electrical work at the Tomball
Retirement Center.  Bice testified that
Entis had no record of that work and that it did not reconcile with Entis’s records
about what it owed to Gray. 

On March 25, 2009, Gray filed five Subcontractor
Lien Affidavits related to HSMTX properties: three in Harris County and one each in Fort Bend County and Jefferson
County.  Gray did not provide Entis with the
required statutory notice of these liens.  One of the Harris County liens related to the
Medical Complex Drive property to secure the $143.89 payment for the December
16, 2008 work.  That lien affidavit
identified “HSNTX/STALLONES-TOMBALL” as the owner of the facility, and “Entis
Mechanical Services, LLC” as the general contractor on that job.    

On March 30, 2009, HSMTX finally began
paying Entis’s past-due bills.  Within
two days, Entis (1) released all its liens on HSMTX properties (even though
full payment from HSMTX had not yet been received), and (2) paid Gray for all
outstanding invoices.  On advice of
counsel and consistent with its desire to secure immediate release of Gray’s liens
on HSMTX’s properties, Entis paid the $143.89 amount that it disputed
owing.  Entis’s counsel immediately sent
copies of each check to Gray’s lawyer, requesting that the checks be negotiated
at his earliest convenience and that the subcontractors’ liens be released. 

At that point, Gray did not cash the
checks or release the liens because he wanted Entis to pay his attorney’s fees
related to filing subcontractor liens on HSMTX properties.  The parties agree that, as of the October 13,
2010 trial, Entis’s checks to Gray had still not been cashed.  The trial testimony was conflicting, however,
about when the liens were finally released. Gray testified that he signed
releases on all five liens about six weeks after receiving Entis’s checks.  He claims that, during that six-week period,
he was waiting to hear back from Entis about whether it was going to pay his
attorney’s fees.  When he learned that
Entis had declined to pay his fees, his attorney prepared all five lien
releases and he signed them. 

In contrast, Haffner testified that
Entis had to go to court to get the liens released.  In support, Entis introduced into evidence a
January 29, 2010 Harris County “Agreed Order Discharging Lien” on the Tomball
Residential Care Center located on Medical Complex Drive—the lien for the December 2008 work that is the
subject of this appeal.  Gray introduced
a May 19, 2009 “Release of Mechanic’s and Materialman’s Lien” that is for the
same Medical Complex Drive address, but with the wrong property owner named.[2]  Gray’s lawyer argued that it was that
inadvertent error that prevented the release from being properly filed in the
real property records and necessitated the later agreed order.  In other words, he argued that Gray intended
to release the lien in May 2009, even though it was not effectively released until
January 29, 2010.  

Entis introduced two other court
orders it obtained releasing two of the other liens: (1) a July 29, 2009 Fort
Bend County “Order Discharging Lien,” and (2) a September 25, 2009 Harris
County “Order Discharging Lien.”  Entis’s
counsel represented to the trial court that he did not know if the remaining
Harris County lien or remaining Jefferson County lien had been released at the
time of trial. 

Bice testified that the amount of
time it took to get Gray’s liens removed created a false impression in the real
property records that Entis did not pay its subcontractors.  He also testified that despite Entis’s
repeated efforts to regain HMSTX as a client, the amount of time it was taking
to resolve Gray’s liens on HMSTX’s properties made HMSTX angry and prevented
HMSTX entities from hiring Entis on any jobs. 


THE TRIAL COURT’S JUDGMENT

Entis sued Gray on October 29,
2009, seeking statutory and exemplary damages under the fraudulent-lien
statute, and an order discharging Gray’s lien for $143.29 for the December 2008
electrical work at the Tomball Retirement Center.    The trial court entered an agreed order on January
29, 2010 discharging the lien, and a bench trial was held on the remaining
claims.  On November 17, 2010, the trial
court entered judgment in Entis’s favor, awarding $10,000 in statutory damages,
as well as attorney’s fees, costs, and post-judgment interest.  The trial court made findings in support of
its judgment.  Gray filed a motion for
new trial, which the trial court denied. 
Gray timely appealed.    

ISSUES ON APPEAL

Gray seeks reversal of the trial
court’s judgment in three issues:

1.     Regarding the third element
of a fraudulent lien claim, does an entire review of the record support a
finding that Gray made, presented, or used the lien at issue with intent to
cause Entis to suffer physical injury, financial injury, or mental anguish or emotional
distress? 

2.     Regarding the first element
of a fraudulent lien claim, does an entire review of the record support a
finding that Gray’s lien affidavit was fraudulent and that he had knowledge
that it was fraudulent? 

3.     General Point of Error: The
Trial Court erred in signing a final judgment in favor of Entis.  

 We interpret
issues one and two as legal sufficiency challenges, as the appellant’s brief’s
standard-of-review section recites the no-evidence standard, the argument
sections contend that there is “no more than a scintilla of evidence” and the
prayer requests that we reverse and render judgment in his favor.  Benavente
v. Granger, 312 S.W.3d 745, 747 (Tex. App.—Houston [1st Dist.] 2009, no pet.)
(when appellant’s issue statement challenging the sufficiency of the evidence
is ambiguous, court looks to brief’s standard-of-review section, argument, and
prayer to determine whether appellant challenges legal or factual sufficiency
of the evidence).   

STANDARD OF REVIEW

In an appeal from a bench trial, a
trial court’s findings of fact have the same weight as a jury’s verdict.  Amador
v. Berrospe, 961 S.W.2d 205, 207 (Tex. App.—Houston [1st Dist.] 1996, writ
denied).  When challenged, findings of
fact are not conclusive if, as here, there is a complete reporter’s record. Id.  When there is a reporter’s record, the trial
court's findings of fact are binding only if supported by the evidence.  Id.  We review the sufficiency of the evidence
supporting the findings by applying the same standards that we use in reviewing
the sufficiency of the evidence supporting jury findings.  Catalina
v. Blasdel, 881 S.W.2d 295, 297 (Tex. 1994). 

When a party who does not have the
burden of proof at trial challenges the legal sufficiency of the evidence, we
consider all of the evidence in the light most favorable to the prevailing
party, indulging every reasonable inference in that party’s favor and
disregarding contrary evidence unless a reasonable fact-finder could not.  City of
Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005); City of Houston v. Hildebrandt, 265 S.W.3d 22, 27 (Tex. App.—Houston
[1st Dist.] 2008, pet. denied) (citing Assoc.
Indem. Corp. v. CAT Contracting, Inc., 964 S.W.2d 276, 285–86 (Tex. 1998)).
 “If there is any evidence of probative
force to support the finding, i.e., more than a mere scintilla, we will
overrule the issue.”  Hildebrandt, 265 S.W.3d at 27 (citing Haggar Clothing Co. v. Hernandez, 164
S.W.3d 386, 388 (Tex. 2005)).

In a bench trial, the trial court,
as factfinder, is the sole judge of the credibility of the witnesses.  Sw. Bell
Media, Inc. v. Lyles, 825 S.W.2d 488, 493 (Tex. App.—Houston [1st Dist.]
1992, writ denied).

APPLICABLE LAW

The fraudulent-lien statute
provides:

(a)     A
person may not make, present, or use a document or other record with:

(1)     knowledge that the document or other record is a fraudulent court
record or a fraudulent lien or claim against real or personal property or an
interest in real or personal property;

(2)     intent that the document or other record be given the same legal
effect as a court record or document of a court created by or established under
the constitution or laws of this state or the United States or another entity
listed in Section 37.01, Penal Code, evidencing a valid lien or claim against
real or personal property or an interest in real or personal property; and

(3)     intent to cause another person to suffer:

(A)    physical injury;

(B)     financial injury; or

(C)     mental anguish or emotional distress.

See Tex. Civ. Prac. & Rem.Code Ann. §
12.002(a) (Vernon Supp. 2011).  

The party asserting that a claimed lien is a
fraudulent lien has the burden to prove the requisite elements in the statute.  Aland v.
Martin, 271 S.W.3d 424, 430 (Tex. App.—Dallas 2008, no pet.).  A party who satisfies the section 12.002(a)
requirements may recover $10,000 or the actual damages caused by the violation,
whichever is greater, in addition to court costs, attorney’s fees, and
exemplary damages.  See Tex. Civ. Prac. &
Rem. Code Ann. § 12.002(b).

Evidence that Gray Knowingly Filed 

Fraudulent Affidavit

Gray argues that there is (1) no
evidence that the lien affidavit at issue here was fraudulent or,
alternatively, (2) no evidence that he had knowledge that it was
fraudulent.  He asserts that “fraudulent”
means more than “false” in the context of the fraudulent-lien statute.  See
Walker & Assocs. Surveying, Inc. v. Roberts, 306 S.W.3d 839, 849 (Tex.
App.—Texarkana 2010, no pet.) (“We see a distinction in an affidavit that is
factually inaccurate in some respect and one that is attempting to perpetrate a
fraud.”).    

While conceding that the affidavit
contained a typographical error—i.e., “HSMTX” was
incorrectly identified as “HSNTX”—Gray insists that the remainder of the affidavit was factually correct
and that the misspelling of HSMTX’s name did render the lien fraudulent. 

Gray also disputes Entis’s
assertion that Entis did not hire Gray as a subcontractor for the work
underlying the lien.  He points to his
own testimony that one of Entis’s owners, Haffner, hired him to perform the
work as Entis’s subcontractor.  Although
he acknowledges that Bice and Austin each instead testified that HSMTX hired
Gray directly, he nonetheless asserts that testimony should be rejected because
Entis “did not even try to offer a proposed ulterior motive of Gray that would
explain why he billed Entis and filed a lien affidavit naming Entis as the
general contractor.”  

When, as here, the trial court is
presented with two factual versions of events, it is the “sole judgment of the
credibility of the witnesses and the weight to be given their testimony.”  McGalliard
v. Kuhlmann, 722 S.W.2d 694, 697 (Tex. 1986).  In doing so, it “may consider all the facts
and circumstances in connection with the testimony of each witness and accept
or reject all or part of that testimony.” Hailey
v. Hailey, 176 S.W.3d 374, 383 (Tex. App.—Houston [1st Dist.] 2004, no
pet.).  “An appellate court may not
substitute its judgment for the trial court’s assessment of witnesses’ testimony
in a bench trial.”  Id.    

There is evidence—through testimony from Haffner, Bice and Austin—that HSMTX called Gray and hired him directly
to perform the work at issue here.  Gray
nonetheless filed a lien affidavit stating that Entis was the general
contractor on that job.  Viewing this
evidence in a light most favorable to the trial court’s findings, we conclude
that there is legally sufficient evidence that the affidavit was false and that
Gray filed the affidavit with knowledge that it was false.  City of
Keller, 168 S.W.3d at 827.  A
reasonable factfinder could reject the contrary evidence cited by Gray, and we
thus must likewise disregard it.  Id. 

Because there is legally sufficient
evidence to support the trial court’s findings that Gray knowingly presented a
fraudulent lien, we overrule Gray’s second issue.  

EVIDENCE
THAT GRAY INTENDED TO CAUSE ENTIS

FINANCIAL INJURY

Gray argues that there is no
evidence to support the trial court’s finding that he intended to cause
financial injury to Entis.  He disputes
Entis’s contention that he refused to release the lien when requested, and argues
that—in any event—the failure to voluntarily release a fraudulent
lien is not enough to demonstrate intent to cause financial injury. 

In response, Entis contends that
the trial court’s finding that Gray intended to cause financial injury to Entis
is supported by “evidence of Gray’s intent of harm [to] Entis before he filed
the lien affidavit, at the time that he filed the lien affidavit and continuing
afterwards.”  Entis points to Gray’s
insistence on being paid for work despite the agreement that he would be paid
by Entis when Entis was paid by HSMTX. 
Entis also argues that intent to harm can be inferred from Gray’s attempting
to create tax problems for Entis by asking a third person to withhold needed
tax information from Entis until Entis would agree to add Gray’s names to its
liens.  Entis also notes that Gray sought
criminal charges against Entis for theft of services despite Gray’s bill not
yet being due, and that Gray failed to give proper notice of its invalid
liens.     

In its brief, Entis also argues
that, because the evidence demonstrates that Gray did not file and maintain the
liens to secure payment of $143, the trial court could have inferred that the
lien at issue was instead designed to cause financial injury to Entis: 

 The
lien affidavits were not about securing payment.  Gray testified that he “wouldn’t have put a
lien on a piece of property for $143.” 
There must have been another reason for Gray to commit perjury and to
file invalid liens, and that was to injure Entis business reputation and destroy
Entis relationship with HSMTX.  This
conclusion is reinforced by the evidence that showed that Gray did not file
releases of liens when paid.  

We agree with Entis that the
evidence as a whole supports the trial court’s finding that Gray intended to
cause Entis financial harm.  The cases
Gray cites for the proposition that a defendant’s failure to remove a lien,
without more, is not sufficient evidence of intent to cause financial harm are
distinguishable.  Two of these four cases
reversed summary judgments, holding that fact issues existed on the issue of
intent.  See Brasch v. Lane, No. 01-09-01093-CV, 2011 WL 2183876, at *6
(Tex. App.—Houston [1st Dist.] June 2, 2011, no pet.) (mem. op.) (reversing
summary judgment in plaintiff’s favor because fact issue existed about intent-to-harm
element under section 12.002); Gray v.
Entis Mech. Servs., L.L.C., 343 S.W.3d 527, 531 (Tex. App.—Houston [14th
Dist.] 2011, no pet.) (reversing summary judgment in plaintiff’s favor because
fact issue existed about intent-to-harm element under section 12.002).  

The other two cases are factually
distinguishable.  Aland v. Martin involved real property that was the subject of a
couple’s division of community property incident to divorce.  271 S.W.3d at 426, 433.  The wife’s attorney, Linda Aland, filed a lien
against the property to secure payment of wife’s attorneys’ fees.  Id.
at 426.  That property was later awarded
to the ex-husband.  Id. at 433.  The husband
argued that Aland’s lien was fraudulent and that her intent to harm him
financially with that lien should be inferred because she (1) did not have
proper consent to burden the property with a lien, (2) burdened property that
was solely owned by husband, despite the underlying debt being owed only by his
ex-wife, and (3) refused to remove the lien when asked.  In reaching the conclusion there was legally
insufficient evidence of an intent to cause injury, the court looked at the
evidence at a whole and determined that the evidence was equally consistent
with an intent to cause injury and the lack of an intent to cause injury.  Id.  It noted that the parties’ divorce decree
expressly addressed the lien, awarding the property to husband, but carving out
the obligation to extinguish the lien to his ex-wife.  Id.  Both husband’s and wife’s attorney initialed
a change to the decree language that deleted the requirement that wife pay off
the lien within a certain time period.  Id. at 432.  Finally, when the wife did pay off the lien, Aland
released the lien.  Id.

Aland is
distinguishable because the case before us lacks evidence consistent with the
lack of an intent to cause financial injury. 
In Aland, the debt underlying
the lien was legitimate—i.e., the
parties agreed that the wife owed the money to the Aland—and the dispute was solely over whether it was
proper to put a lien on the property later awarded to husband.  Aland argued that her purpose in filing and
maintaining the lien was to ensure payment for her services and, when she
received payment from her client, she removed the lien burdening the husband’s
property.  Here, not only does the
evidence demonstrate that Gray should never have listed Entis as the general
contractor on the lien filed, Gray failed to remove the lien even after the underlying debt was paid
by Entis.[3]  Id.  

  
The court in Preston Gate, LP. v.
Bukaty, the other case Gray cites, rejected the argument that intent to
cause financial injury is “self-evident” from the refusal to remove a
lien.  248 S.W.3d 892, 897 (Tex.
App.—Dallas 2008, no pet).  There again,
the lienholder was pursuing an actual unpaid debt, and the dispute was over
whether it could properly burden property owned by an affiliate of the
debtor.  Id. at 896.  Unlike this
case, the lien holder in Preston did
not refuse to remove the lien after the debt underlying the lien was
satisfied.  Id. at 895.  Rather, when the
default judgment upon which the judgment lien was based was later vacated, the
lien-holder filed a release of the lien. 
Id.   

Here, Entis does not rely solely upon
the failure of Gray to release the lien when asked—it also relies on Gray’s failure to release the
lien after Entis paid the debt.  Bice also testified that—given the volume of work that Entis did for HSMTX—Gray would know that angering HSMTX with invalid
liens would be harmful to Entis’s relationship with a very important
client.  Gray himself admitted that he
maintained liens on HSMTX properties after being paid by Entis in hopes Entis
would also pay his attorney’s fees.  It
is a reasonable inference that he understood that HSMTX would be upset with
Entis over liens on HSMTX property indicating (falsely) that Entis did not pay
subcontractors for work on HSMTX properties and that Gray’s purpose was not to
have the underlying debt paid but instead to leverage for payment of his
attorney’s fees.  

Because we conclude there is
legally sufficient evidence to support the trial court’s finding that Gray
intended financial harm to Entis, we overrule Gray’s first issue.  

CONCLUSION

We have overruled Gray’s first and
second issue.  Gray’s brief provides no
separate argument or analysis related to his third issue, i.e. that the trial
court “erred in signing a final judgment in favor of Etnis.”  We thus treat that issue as subsumed within
our analysis of his first and second issues and overrule Gray’s third issue.

We affirm the trial court’s
judgment.    

 
     

 

 

                                                                   Sherry
Radack

                                                                   Chief
Justice 

 

Panel
consists of Chief Justice Radack and Justices Higley and Brown.

 











[1]
          Each HSMTX-operated facility is
owned by a separate limited liability company with its own name.  





[2]
          The release named
“HSMTX/LINDBERG-BEAUMONT LLC” rather than “HSMTX/STALLONES-TOMBALL, LLC.”  





[3]
          The explanation for doing so given at trial
was simply that Gray hoped he could convince Entis to pay his attorney’s fees.