**Francis SHARPE, Appellant,**

v.

**Windle TURLEY, Appellee.**

No. 05–04–01521–CV.

Court of Appeals of Texas, Dallas.

March 23, 2006.

Rehearing Overruled May 25, 2006.

John E. Wall, Jr., Law Offices of John E. Wall, Jr., Dallas, for Appellant.

Thomas B. Cowart, Turley Law Firm, Dallas, for Appellee.

Before Justices FITZGERALD, LANG–MIERS, and MAZZANT.

## OPINION

Opinion by Justice LANG–MIERS.

Francis Sharpe appeals the trial court's summary judgment dismissing his fraud claim against Windle Turley and an order denying his special exceptions. We affirm.

## BACKGROUND

This lawsuit is based on Sharpe's claim that he is entitled to items that he removed from a trash dumpster maintained

by the Roman Catholic Diocese.[1] Turley is an attorney who represented several plaintiffs in a lawsuit against the Diocese.[2] While that lawsuit was pending, Sharpe contacted Turley and told him that he had documents that Turley might find useful in that lawsuit, including financial information that he found in the Diocese's trash dumpster. Ultimately, Turley subpoenaed some items from Sharpe and took his deposition. In response to the subpoena, Sharpe delivered items to Turley that he had removed from the Diocese's dumpster.[3]

Once that case was concluded, Turley did not want to keep the items, and both the Diocese and Sharpe contended that they were the rightful owners of the items. Turley turned them over to Randall Mathis, the attorney for the Diocese, to hold until the court determined who was ultimately entitled to them. Turley, on Sharpe's behalf, as well as Mathis and Sharpe all filed motions asking the trial court to decide who was entitled to the items. Mathis claimed the items should be returned to the Diocese, and Sharpe and Turley claimed that they should be returned to Sharpe. Ultimately, this Court concluded that the trial court was without jurisdiction to make the decision of who was entitled to the items and that, to have that issue decided, Sharpe had to file another lawsuit that included the Diocese as a party.[4]

Sharpe filed this lawsuit claiming, among other things, that Turley obtained those items from him through fraud. Turley filed a motion for summary judgment claiming that (1) the unlawful acts rule bars Sharpe's claim, (2) Sharpe did not suffer damages because the trash is worthless, (3) Turley did not misrepresent that he would file a motion protecting Sharpe's interest in the documents, (4) Sharpe cannot bring a fraud claim on the basis of Turley's opinions about the law, (5) Turley never agreed to represent Sharpe, (6) public policy bars Sharpe's claim, (7) Sharpe cannot show causation because the trial court order had already determined ownership, (8) Sharpe cannot show that he relied on any statement by Turley, and (9) a two-year statute of limitations bars Sharpe's claim.

## STANDARD OF REVIEW

Appellate courts review a grant of summary judgment de novo. *Dickey v. Club Corp. of Am.,* 12 S.W.3d 172, 175 (Tex. App.-Dallas 2000, pet. denied). To prevail on a traditional motion for summary judgment, the movant must show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *Southwestern Elec. Power Co. v. Grant,* 73 S.W.3d 211, 215 (Tex.2002). Courts will resolve any doubts about the existence of a genuine issue of material fact against the movant. *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). Reviewing courts will view all evidence and any reasonable infer-

---

**1.** The opinion in Sharpe's first appeal of this case, *Sharpe v. Roman Catholic Diocese of Dallas,* 97 S.W.3d 791, 793–95 (Tex.App.-Dallas 2003, pets. denied), sets out the facts and history of this case.

**2.** *John Doe I, et al. v. Reverend Rudolph Kos, et al.*

**3.** Sharpe states that he removed some items from the dumpster and some from the area

around the dumpster. Turley argues that Sharpe did not preserve any argument about items removed from the area around the dumpster. Even if Sharpe had preserved that argument, the difference between whether the items were removed from in or around the dumpster is not material to our determination.

**4.** *Sharpe,* 97 S.W.3d at 794.

ences in the light most favorable to the nonmovant. *Id.* They will also view as true all evidence favorable to the nonmovant, *Southwestern Elec. Power Co.*, 73 S.W.3d at 215, and not consider any evidence but uncontroverted evidence favorable to the movant. *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex.1965). A defendant must therefore either negate at least one element of the plaintiff's theory of recovery or plead and conclusively prove each element of an affirmative defense. *See Walker v. Harris*, 924 S.W.2d 375, 377 (Tex.1996). When the trial court fails to specify the grounds upon which it is granting summary judgment, the reviewing court will affirm the judgment if any one of the theories advanced in the motion is meritorious. *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex.1993). In this case, the summary judgment order states that all of Turley's grounds are meritorious.

### UNLAWFUL ACTS RULE

In his first three issues, Sharpe complains that the trial court erred in granting summary judgment based on the unlawful acts rule. He argues that Turley failed to both properly plead and prove that defense. Turley responds that the defense was properly pleaded and proven. He contends that Sharpe could not prove that he had a lawful interest in the items because he had obtained the items without the Diocese's permission and from its private property and that summary judgment was properly granted because Sharpe could not prove that he was unlawfully deprived of those items by Turley.

*Turley's Pleadings*

Initially, Sharpe claims that the unlawful acts rule was not timely pleaded as a defense and was waived. But we note that Turley pleaded the defense of unlawful acts in his March 25, 2004 motion for summary judgment on the fraud claim, his August 11, 2004 first supplement to his motion for summary judgment on the fraud claim, his August 11, 2004 second amended answer, and his September 1, 2004 third amended answer. Additionally, the trial court expressly allowed the parties to supplement the record before it ruled on the motion for summary judgment and established deadlines for doing so. *See* TEX.R. CIV. PROC. ANN. 63 (providing that party must obtain leave of court to file otherwise untimely pleadings). And, in its order granting summary judgment, the trial court expressly held that those pleadings were all considered by the court in making its decision. *Cf. Goswami v. Metropolitan Sav. and Loan Ass'n*, 751 S.W.2d 487, 490 (Tex.1988) (presuming that court granted leave to file belated pleadings when amended petition part of record before trial court and trial court's judgment stated that it considered all pleadings on file). Sharpe does not claim that the court erred in considering those pleadings. Consequently, Sharpe has not demonstrated that the pleadings were not timely or that the defense was waived.

*Summary Judgment Motion*

In his motion for summary judgment, Turley contended that Sharpe's fraud claim was based upon his own unlawful act of taking items from the Diocese dumpster without permission.[5] Because Sharpe

5. Turley alleged in his motion for summary judgment, "No matter which representation he alleges, Sharpe's fraud cause of action is premised on the claim that he was deprived of the trash he had stolen from the Diocese. To succeeded [sic] on this claim, Sharpe must show that he was entitled to possession of the trash. The only way he can do this is to show how he came into possession of the trash in the first place. Thus, he must explicitly rely

claimed that he was defrauded into turning over the items to Turley and Sharpe's claim was premised on his contention that he was lawfully entitled to the items, Turley argued that Sharpe's illegal conduct in obtaining the items precluded him from recovering on a claim relating to those items.

### Applicable Law: Unlawful Acts

Under the unlawful acts rule, a plaintiff cannot recover for his claimed injury if, at the time of the injury, he was engaged in an illegal act. *The Gulf C. & S.F. Ry. Co. v. Johnson*, 71 Tex. 619, 621–22, 9 S.W. 602, 603 (1888). Texas courts have applied this rule, along with public policy principles, to prevent a plaintiff from recovering claimed damages that arise out of his or her own illegal conduct. *See, e.g., Saks v. Sawtelle, Goode, Davidson & Troilo*, 880 S.W.2d 466 (Tex.App.-San Antonio 1994, writ denied); *Rodriquez v. Love*, 860 S.W.2d 541 (Tex.App.-El Paso 1993, no pet.); *Dover v. Baker, Brown, Sharman & Parker*, 859 S.W.2d 441 (Tex. App.-Hous. [1st Dist.] 1993, no pet.). Courts have interpreted this defense to mean that if the illegal act is inextricably intertwined with the claim and the alleged damages would not have occurred but for the illegal act, the plaintiff is not entitled to recover as a matter of law. *See Ward v. Emmett*, 37 S.W.3d 500, 503 (Tex.App.-San Antonio 2001, no pet.) (holding that because appellant would not have suffered alleged injury in absence of illegal conduct, trial court properly granted summary judgment against her); *Saks*, 880 S.W.2d at 470; *Dover*, 859 S.W.2d at 451.

Additionally, a property owner's rights are superior to any rights of a subsequent possessor who has stolen the property or purchased stolen property. *See, e.g., Olin Corp. v. Cargo Carriers, Inc.*, 673 S.W.2d 211, 216 (Tex.App.-Hous. [14th Dist.] 1984, no writ) (holding that one who purchases stolen property from a thief, no matter how innocently, acquires no title in the property; title remains in the owner); *A. Benjamini, Inc. v. Dickson*, 2 S.W.3d 611, 613–14 (Tex.App.-Hous. [14th Dist.] 1999, no pet.) (holding that owner's rights to property were superior to rights of people who stole property as well as subsequent purchasers); *Texas Diamond Intern., Inc. v. Tiffany and Co.*, 47 S.W.3d 589, 592–93 (Tex.App.-San Antonio 2001, pet. ref'd) (recognizing that bailees of property are obligated to return property to rightful owner where the claim was that the property that was delivered to the bailee had been stolen). But property that is abandoned cannot be the subject of theft. *See Jordan v. State*, 107 Tex.Crim. 414, 296 S.W. 585 (1927) (holding that jury should have been instructed to acquit appellant of stealing if they found he believed the property was abandoned by the owner); *see also State v. Bartee*, 894 S.W.2d 34, 40 (Tex.App.-San Antonio 1994, no pet.) (explaining that in order to be subject of larceny or theft, thing or property taken must be capable of individual ownership); *Nicholson v. State*, 369 So.2d 304, 307 (Ala. Crim.App.1979) (explaining that because abandoned property belongs to no one, nor is it in anyone's possession, there is no property right in it, and it cannot therefore be the subject of larceny).

### Were the items abandoned by the Diocese?

Sharpe argues that his claim is not barred by his unlawful acts and that he lawfully obtained the items because the

---

on his unlawful acts of trespass, stealing the Diocese's property and violating the Dallas

ordinances."

Diocese abandoned them.[6] To demonstrate that the items were not abandoned and that Sharpe's conduct in taking them was unlawful, Turley cites us to definitions of the term "abandonment"[7] and to City of Dallas ordinances regarding trash disposal. He contends that the Diocese did not abandon and could not have lawfully abandoned the items because waste disposal is a highly regulated activity, and it was required to dispose of trash either directly or through its agent at an approved disposal site.[8] Turley also argues that Sharpe could not lawfully remove items from the Diocese dumpster because, under Section 18–51 of the Dallas City Code, Chapter 18,

Article 1, only certain entities can lawfully remove solid waste from garbage receptacles.[9] Consequently, the issue is whether the summary judgment evidence establishes that the Diocese did not abandon the items that Sharpe removed from its property.

■■■ To make this determination, we apply the following definition of the term "abandonment:"

[to] give up absolutely; to forsake entirely; to renounce utterly; to relinquish all connection with or concern in; to desert. [Citations omitted.] When applied to personal property we think the

---

6. Sharpe alleged that "[t]he property of Frank Sharpe which is the subject of this litigation was clearly abandoned by the Defendant Diocese, and its agents, servants and/or employees. The Diocese has no right to claim an interest in property which was clearly abandoned."

7. Turley argues that under Texas law, "the term 'abandon' means '[t]o give up absolutely; to forsake entirely' to renounce utterly; to relinquish all connection with or concern in; to desert.[] [citation omitted] [sic]. When applied to personal property ... the term also includes an intent by the owner to leave the property free to be appropriated by any other person. *Railroad Commission of Texas v. Waste Management of Texas*, 880 S.W.2d 835, 843 (Tex.App.-Austin 1994, no writ); *see also Texas Water Rights Commission v. Wright*, 464 S.W.2d 642, 843[sic] (Tex.1971) ('Abandonment is the relinquishment of a right by the owner with the intent to forsake and desert it')."

8. Turley argues that

the Diocese's duty with regard to the trash did not end when the trash was placed in the dumpster. Rather, the Diocese had a continuing duty that followed the trash until it was deposited at "an approved disposal site." [Citation omitted]. Only after its agent, Waste Management, disposed of the trash at an approved disposal site was the Diocese released from its legal duty to manage its waste. Thus, under the law, the Diocese could not "abandon" the trash.

Turley also cites to section 18–49 ("Responsibility of Producer of Dry or Wet Solid Waste"), Dallas City Code, Chapter 18, Article I:

It is the responsibility of the producer of any dry or wet solid waste to ensure that such waste material is disposed of in an approved manner at an approved disposal site. It is the producer's responsibility to inform the licensee, in writing, of any waste that includes any material that is hazardous by reason of its pathological, radiological, explosive, toxic, or corrosive character.

9. Section 18–51 ("Restrictions on Removal of Solid Waste") of the Dallas City Code, Chapter 18, Article 1 provides:

(a) A person commits an offense if he removes from any garbage container or receptacle any dry or wet solid waste, or in any way interferes with any garbage container or receptacle.

(b) It is a defense to prosecution under Subsection (a) of this section that the person was:

(1) an employee of the city in performance of official duties;

(2) a licensee under this article performing solid waste collection service in compliance with the terms of this article and the solid waste collection license;

(3) any owner or occupant of the premises on which the container or receptacle is located.

Violation of the ordinance is punishable by a fine not to exceed $2,000.00 nor less than $100.00 for the first conviction.

term also includes an intent by the owner to leave the property free to be appropriated by any other person.

*R.R. Comm'n of Tex. v. Waste Mgmt. of Tex.*, 880 S.W.2d 835, 843 (Tex.App.-Austin 1994, no writ).

■ The summary judgment evidence shows that the Diocese generated waste, Diocese employees collected the waste and deposited it in a dumpster located on Diocese property, and the Diocese contracted with a private waste disposal company who emptied the dumpster into a truck and hauled the waste to a private landfill. The evidence also shows, based upon an affidavit from the Diocese, that the Diocese intended that "the trash never leave its control or the control of its private agents."

■ Sharpe contends that the items were in a publicly accessible dumpster, that the Diocese did not post a "No Trespassing" sign, did not object to his removal of the items until after his deposition had been taken, did not order confidential disposal to protect privacy, and did not prosecute Sharpe for taking the items. But whether or not a "no trespassing" sign was posted on the dumpster is not determinative of whether the items were abandoned. The absence of a "no trespassing" sign on private property does not mean that the owner gives the public permission to enter and remove items from that property. And items on private property are not "free for the taking" simply because they are publicly accessible. Additionally, the

Diocese contracted with a private waste disposal company to remove the trash from the dumpster and dispose of it. There is no evidence that the Diocese intended to leave the items in the dumpster "free to be appropriated by any other person." And the Diocese need not have pursued a claim against Sharpe to show that it did not abandon the items.

We conclude that this summary judgment evidence demonstrates that the Diocese did not abandon the items.

### Do Fourth Amendment Privacy Cases Apply?

■ Sharpe also argues that the summary judgment evidence does not prove that he stole the items because the Diocese did not have a reasonable expectation of privacy in items that were in or around the dumpster. He contends that because the items were accessible to anyone, albeit on private property, the Diocese had no right to privacy in them, and he was free to take them.

To support his position, he relies on cases interpreting the application of the Fourth Amendment to government search and seizure of trash and motions to suppress in criminal cases. But those cases do not apply. *See, e.g., California v. Greenwood*, 486 U.S. 35, 41, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988) (holding that the Fourth Amendment does not prohibit the warrantless search and seizure of garbage left for collection outside the curtilage of the home).[10] A Fourth Amendment analy-

---

**10.** Many other cases have discussed the application of the Fourth Amendment to government search and seizure of trash. *See United States v. Barlow*, 17 F.3d 85, 88 (5th Cir.1994) (holding that defendant abandons reasonable expectation of privacy when he leaves an item in a public place); *United States v. Dunkel*, 900 F.2d 105, 107 (7th Cir.1990) (holding that someone who tosses documents in dumpster to which hundreds of people have ready access has no legitimate expectation of privacy in dumpster or contents), *vacated on other grounds*, 498 U.S. 1043, 111 S.Ct. 747, 112 L.Ed.2d 768 (1991); *United States v. Reed*, 733 F.2d 492, 501 (8th Cir.1984) (holding that officer's entry into fenced but open back parking lot did not invade defendants' reasonable expectation of privacy); *United States v. Ed-*

sis would resolve whether the Diocese had a reasonable expectation of privacy from government intrusion, not who owned the trash or whether someone was free to take those items from the Diocese dumpster. Moreover, in *Greenwood*, the Supreme Court held that the defendant did not have a reasonable expectation of privacy in trash that was left in a public area; not that the defendant did not have a reasonable expectation of privacy in trash left on private property, as is true here. Also, those cases do not hold that someone may remove items from private property without the owner's permission, regardless of how accessible the property or those items may be to the public, or that by taking the property someone gains a greater right to that property than the original property owner.

Because his conduct in removing the Diocese's items from Diocesan property without its permission is the foundation of his allegation that he has a superior right to the items and that alleged right is the basis of his fraud claim against Turley, the trial court properly granted summary judgment in favor of Turley. *See Ward*, 37 S.W.3d at 503; *Saks*, 880 S.W.2d at 470; *Dover*, 859 S.W.2d at 451.

We affirm the trial court's grant of summary judgment on this ground and need not address his other issues regarding the summary judgment.

### OBJECTIONS TO SUMMARY JUDGMENT EVIDENCE

■ In his eighth issue, Sharpe argues that the trial court erred by overruling his objections to summary judgment evidence and by considering that evidence in ruling on Turley's motion for summary judgment. Turley contends that the issue was waived because it was not adequately briefed, because Sharpe does not attempt to show how the trial court's ruling "probably caused the rendition of an improper judgment," and because there was no ruling on the objections and nothing was preserved for review. We agree that there was nothing preserved for review and that the issue was not adequately briefed or argued.

Additionally, without a demonstration of how the summary judgment was based on allegedly inadmissible summary judgment evidence or how any error in ruling caused the rendition of an improper judgment, we conclude that there is no error. *See* TEX. R.APP. P. 38.1(h) (providing that brief must contain clear and concise argument for contentions with appropriate citations to authorities and record); *Wolfe v.C.S.P.H., Inc.*, 24 S.W.3d 641, 647 (Tex.App.-Dallas

*monds*, 611 F.2d 1386, 1388 (5th Cir.1980) (holding no reasonable expectation of privacy in dock in which boats loaded and unloaded and in which there was business activity); *United States v. Vahalik*, 606 F.2d 99, 101 (5th Cir.1979) (adopting rule that act of placing garbage for collection, without proof that person has made special arrangement for its disposition, is an act of abandonment that terminates any Fourth Amendment protection); *United States v. Bomengo*, 580 F.2d 173, 175 (5th Cir.1978) (holding that Fourth Amendment proscribes only government action, not search by private persons for private purposes); *Williams v. State*, 835 S.W.2d 781, 784 (Tex.App.-Hous. [14th Dist.] 1992, no pet.) (holding that when police take posses-

sion of abandoned property, there is no seizure under Fourth Amendment); *O'Shea v. State*, 740 S.W.2d 527, 528–29 (Tex.App.-Hous. [14th Dist.] 1987, no pet.) (holding that appellant had no privacy interest in abandoned bag); *Lambert v. State*, 625 S.W.2d 31, 33 (Tex.App.-San Antonio 1981, no pet.) (holding that exclusionary rule under the Fourth Amendment applies only to governmental action and not to action of private security guard); *Mercer v. State*, 450 S.W.2d 715, 717 (Tex.Civ.App.-Austin 1970, pet. dism'd as moot) (holding that Fourth Amendment proscribes governmental action and not acts of individuals in which government has no part).

2000, no pet.) (holding that appellant waives issues if he fails to support contentions with appropriate authority).

## SPECIAL EXCEPTIONS

In Sharpe's ninth issue, he claims that the trial court erred by overruling his special exceptions to Turley's answer. But Sharpe does not allege that the court's ruling impacted the judgment granting summary judgment and has not briefed or argued this issue or demonstrated how the trial court abused its discretion by its ruling; instead he simply restates what he raised as special exceptions below. As a result, he has not presented an issue for this court's review. *See* TEX.R.APP. P. 38.1(h); *Wolfe,* 24 S.W.3d at 647.

## CONCLUSION

We conclude that the trial court properly granted Turley's motion for summary judgment. We affirm the trial court's judgment. TEX.R.APP. P. 43.2(a).