**Mary Ann ARREDONDO, Individually and as Representative of the Estate of Joel Martinez, Deceased, Appellant**

v.

**Geoffrey DUGGER, Appellee.**

No. 05–09–00625–CV.

Court of Appeals of Texas, Dallas.

May 31, 2011.

---

Adam Rual Hardison, Hardison Law Firm, Addison, TX, for Appellant.

John K. Dunlap, Byrne, Cardenas & Smitherman, Dallas, TX, for Appellee.

Before Justices MORRIS, MOSELEY, and LANG.

## OPINION

Opinion By Justice MOSELEY.

Appellant Mary Ann Arredondo filed this wrongful death lawsuit against appellee Geoffrey Dugger for damages arising out of the death of her son, Joel Martinez. She alleged Dugger was negligent in delaying to call 911 and in failing to advise paramedics that Martinez had used heroin, and that this negligence contributed to Martinez's death. Dugger answered and moved for traditional summary judgment raising an affirmative defense under the unlawful acts doctrine, the common law doctrine that bars a plaintiff from recovering damages arising out of his own unlaw-

ful acts. *See Gulf, C. & S.F. Ry. Co. v. Johnson*, 71 Tex. 619, 9 S.W. 602, 603 (1888). The trial court granted the motion for summary judgment without specifying the grounds relied on, and later denied Arredondo's motion for new trial.

On appeal, Arredondo argues the trial court erred because the unlawful acts doctrine does not apply to her wrongful death claim and has been superseded by a similar statutory defense that requires conviction for the criminal act. We conclude the wrongful death act does not preclude application of the unlawful acts doctrine, but that section 93.001 [1] of the civil practice and remedies code applies to Arredondo's claim and controls over the common law. Because the common law unlawful acts doctrine is inapplicable to Arredondo's claim and because Dugger did not establish the elements of the section 93.001 affirmative defense, the trial court erred by granting summary judgment. Accordingly, we reverse the trial court's judgment and remand for further proceedings.

### BACKGROUND

According to his deposition, Dugger went to Martinez's house on the night in question and saw Martinez put some black tar heroin in his pocket before they left to go to the liquor store. After buying some tequila, they went to Dugger's house, drank tequila, smoked marijuana, and snorted black tar heroin. After a while, Martinez passed out. About thirty minutes later, Dugger noticed Martinez was still unconscious, vomiting, and choking. Dugger knew something was wrong with Martinez, but did not call 911 immediately. Instead he called Martinez's mother, the plaintiff Arredondo. However, he told her only that Martinez had been drinking and was throwing up. She said to let him sleep it off. It was another fifteen minutes

---

1. *See* Tex. Civ. Prac. & Rem.Code Ann. § 93.001 (West 2011). Unless otherwise indicated, all statutory references in this opinion are to the civil practice and remedies code.

before Dugger called 911. Police and paramedics arrived about five minutes later.

According to Arredondo's allegations, Dugger then misled the paramedics by telling them Martinez had been drinking, but not telling them Martinez had also taken heroin. The paramedics treated Martinez for alcohol poisoning. Their efforts to revive Martinez failed and he died about thirty minutes after the paramedics arrived. There is evidence that if the paramedics had known that Martinez might have been suffering an overdose of heroin, they would have treated him with additional drugs to counteract the effects of the narcotic.

Arredondo sued Dugger under the wrongful death and survival statutes, alleging Dugger was negligent by delaying calling 911 and by failing to disclose to the paramedics that Martinez had taken heroin. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 71.002, 71.021 (West 2008). Dugger answered alleging as an affirmative defense the unlawful acts doctrine. Under this common law defense, if the plaintiff was engaged in an unlawful act that was inextricably intertwined with the claim and the alleged damages would not have occurred but for the plaintiff's unlawful act, the claim is barred. *See Johnson,* 9 S.W. at 603; *Sharpe v. Turley,* 191 S.W.3d 362, 366 (Tex.App.-Dallas 2006, pet. denied).

Dugger filed a traditional motion for summary judgment asserting he proved the elements of the unlawful acts doctrine affirmative defense as a matter of law.[2] He argued the unlawful acts doctrine "is especially applicable to this case because it is uncontested that the deceased, Joel Martinez, ingested illegal drugs just before his death, and the Plaintiff cannot establish her cause of action without conceding that her son had used heroin. In fact, [Martinez's] use of heroin is the central issue in this extremely sad story." The motion continued, "Here, if [Martinez] had not ingested heroin, cheese,[3] and marijuana, then [he] would not have died. Thus, the Plaintiff is barred from recovery because [Martinez's] illegal drug use is the reason he died...."

In her summary judgment response, Arredondo argued that Dugger had failed to prove the necessary elements of the defense, i.e., that (1) at the time of the injury, (2) Martinez was engaged in an illegal act, and (3) the illegal act contributed to the injury. Arredondo also argued the common law unlawful acts defense does not apply to this case because it is inconsistent with the terms of the wrongful death statute and with the statutory defense against plaintiffs who have been finally convicted of a felony that was the sole cause of the damages. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 71.002, 71.006, 93.001.

After a hearing, the trial court granted Dugger's motion and dismissed Arredondo's claims with prejudice. The trial court also denied Arredondo's motion for rehearing and motion for new trial.

Arredondo does not argue on appeal whether Dugger established the elements of the unlawful acts affirmative defense as a matter of law.[4] She contends only that

2. Dugger's motion also included a no-evidence motion for summary judgment attacking the elements of Arredondo's claims. By a rule 11 agreement at the trial court, the parties submitted to the trial court only the unlawful acts doctrine defense under the traditional motion for summary judgment.

3. A dangerous mixture of black tar heroin and Tylenol P.M.

4. In her response to Dugger's motion for summary judgment, Arredondo also argued that the chapter 33 proportionate responsibility system superseded the unlawful acts doctrine. However, she does not raise that issue on appeal. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 33.001–.017. Accordingly, that issue is not before us and we express no opinion on the question. TEX.R.APP. P. 47.1.

the defense does not apply here because of "express contrary language" in the wrongful death statute and because the defense has been superseded by section 93.001.

## STANDARD OF REVIEW

The standards for reviewing summary judgments are well established and we follow them in reviewing this appeal. *See Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). We review a trial court's summary judgment de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex.2003). A defendant moving for traditional summary judgment must either (1) disprove at least one essential element of the plaintiff's causes of action as a matter of law or (2) plead and conclusively establish each essential element of an affirmative defense. *See Doe v. Boys Clubs of Greater Dall., Inc.*, 907 S.W.2d 472, 476–77 (Tex.1995). Once the defendant establishes its right to summary judgment as a matter of law, the burden shifts to the plaintiff to present evidence raising a genuine issue of material fact, thereby precluding summary judgment. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979); *Talford v. Columbia Med. Ctr. at Lancaster Subsidiary, L.P.*, 198 S.W.3d 462, 464 (Tex.App.-Dallas 2006, no pet.).

## APPLICABLE LAW

### A. Wrongful Death Act

Arredondo's cause of action is based on sections 71.002 and 71.006 of the wrongful death act. Subsection 71.002(b) provides that "a person is liable for damages arising from an injury that causes an individual's death if the injury was caused by the person's ... wrongful act, neglect, carelessness, unskilfulness or default." TEX. CIV. PRAC. & REM.CODE ANN. § 71.002(b).[5] Section 71.006 provides that "an action under this subchapter is not precluded because the death is caused by a felonious act or because there may be a criminal proceeding in relation to the felony." *Id.* § 71.006.[6]

### B. Unlawful Acts Doctrine

 The unlawful acts doctrine prevents a plaintiff from recovering claimed damages that arise out of his or her own unlawful conduct:

> In those cases where it is shown that, at the time of the injury, the plaintiff was engaged in the denounced or illegal act, the rule is, if the illegal act contributed to the injury, he cannot recover; but, if plaintiff's act did not contribute to the injury, the fact alone that at the time he was engaged in an act in violation of law will not of itself preclude a recovery.

*Johnson*, 9 S.W. at 603 (citations omitted).

 The common law doctrine is based on the public policy against allowing wrongdoers to benefit from their own wrongs. *See Sharpe*, 191 S.W.3d at 366. If the plaintiff's unlawful act is inextricably intertwined with the claim, and the alleged damages would not have occurred but for the unlawful act, the plaintiff may not recover as a matter of law. *Id.* The unlawful conduct, however, must be a proximate cause of the injury complained of in order

---

**5.** Injury is not defined in the statute, but generally means "[t]he violation of another's legal right, for which the law provides a remedy; a wrong or injustice," or "[a]ny harm or damage." BLACK'S LAW DICTIONARY (9th ed. 2009).

**6.** The language of these sections was adopted as part of the non-substantive statutory revision program when the civil practice and remedies code was adopted in 1985. *See* TEX. CIV. PRAC. & REM CODE ANN. § 1.001 (West 2002). By adopting the code, the legislature intended no substantive change in the law. Act of May 17, 1985, 69th Leg., R.S., ch. 959, § 10, 1985 TEX. GEN. LAWS 3242, 3322.

to bar recovery. *See Denison & S. Ry. Co. v. Carter,* 98 Tex. 196, 82 S.W. 782, 784 (1904) (trial court should have admitted evidence of ordinance prohibiting jumping from moving train in suit for damages to minor plaintiff injured after jumping from moving street car; "It is not the mere fact that, when injured, [plaintiff] was violating law, but the fact that his violation led to his injury, that defeats him."); *St. Louis, B. & M. Ry. Co. v. Price,* 269 S.W. 422, 423, 428 (Tex. Comm'n App.1925, judgm't adopted) (plaintiff's violation of statute must be proximate cause of injury before it will preclude recovery); *Pyeatt v. Anderson,* 269 S.W. 429, 430 (Tex. Comm'n App.1925, judgm't adopted) (plaintiff allowed to recover absent evidence plaintiff's driving motorcycle without permission of owner was proximate cause of collision).

## C. Statutory Defenses

In 1987, the legislature enacted a statutory affirmative defense to certain claims for personal injury or death brought by persons convicted of a felony. *See* Tex. Civ. Prac. & Rem.Code Ann. § 93.001(a)(1). The legislature enacted another, similar statute in 1995. *See* Tex. Civ. Prac. & Rem.Code Ann. §§ 86.001–.007 (West 2011). We address these statutes in more detail herein.

## D. Statutory Construction

Resolution of this case requires us to construe several statutes to determine if the common law unlawful acts doctrine has been superseded by statute. Questions of statutory construction are questions of law and reviewed de novo. *City of Rockwall v. Hughes,* 246 S.W.3d 621, 626 (Tex.2008). Our goal is to ascertain and give effect to the legislature's intent as expressed by the language of the statute. *McIntyre v. Ramirez,* 109 S.W.3d 741, 745 (Tex.2003). We follow the rules established by the legislature for construction of statutes.

*See* Tex. Gov't Code Ann. §§ 311.001–.034 (West 2005).

We begin with the plain and common meaning of the statute's words, and if the language is unambiguous, we interpret the statute according to its plain meaning. *See* Tex. Gov't Code Ann. § 311.011 (words are read in context and construed according to rules of grammar and common usage; words with technical or particular meaning are construed accordingly); *McIntyre,* 109 S.W.3d at 745. We may also consider other matters, such as the objective of the law, its legislative history, the circumstances under which it was enacted, the common law or former statutory provisions, including laws on the same or similar subjects, and the consequences of a particular construction. Tex. Gov't Code Ann. § 311.023; *McIntyre,* 109 S.W.3d at 745.

It is presumed that in enacting a statute, the legislature intended: (1) compliance with the United States and Texas Constitutions; (2) the entire statute to be effective; (3) a just and reasonable result; (4) a result feasible of execution; and (5) the public interest to be favored over any private interest. Tex. Gov't Code Ann. § 311.021. Further, courts never presume the legislature did a useless act. *Hunter v. Fort Worth Cap. Corp.,* 620 S.W.2d 547, 551 (Tex.1981). Courts "will not read statutory language to be pointless if it is reasonably susceptible of another construction." *City of LaPorte v. Barfield,* 898 S.W.2d 288, 292 (Tex.1995) (citing *Chevron Corp. v. Redmon,* 745 S.W.2d 314, 316 (Tex.1987)).

The interplay between statutory language, the rules of statutory construction, and the common law is illustrated in the supreme court's opinion in *Hunter,* which involved the construction and application of statutory and common law in a negligence suit brought against the sharehold-

ers of a defunct corporation. *See Hunter,* 620 S.W.2d at 548.

At common law, dissolution of a corporation terminated its legal existence and abated all claims against it, leaving the plaintiff with no defendant to sue. *See id.* at 549–50 & n. 5. To alleviate the harsh effects of this common law rule, the equitable trust fund theory was developed under the common law to allow creditors of the corporation to pursue the assets of the corporation after they were distributed to the shareholders. *Id.* at 550. The Texas legislature enacted several remedial statutes embodying the equitable trust fund theory. *Id.*

In *Hunter,* the plaintiff was injured when an elevator fell on him while he was working in the elevator pit. *Id.* at 548. Because the injury occurred several years after the dissolution of the corporation that installed the elevator, the plaintiff sued the shareholders of the former corporation under the equitable trust fund theory. *Id.* The plaintiff in *Hunter* argued he could rely on the common law trust fund theory apart from the then-current remedial statute, which required suit to be brought within three years of the dissolution of the corporation. *Id.* at 549. The shareholders argued that the statute supplanted the trust fund theory and the plaintiff was required to look solely to the statute to determine if the legislature had provided him with a remedy. *Id.*

The supreme court concluded that the remedial statute would serve no purpose unless the legislature intended to replace the equitable trust fund theory:

> Even if the trust fund theory did exist outside of these remedial statutes, we must assume that when the legislature enacted Article 7.12 it knew to what extent the equitable doctrine already provided a remedy for pre-dissolution claims. . . . With this in mind, *no real purpose would be served by the enactment of Article 7.12,* permitting suits against officers, directors, and shareholders of a dissolved corporation [if brought within three years of corporate dissolution], *unless the legislature intended for the statute to bar resort to the trust fund theory apart from the statute* in order to enforce post-dissolution claims. To hold otherwise would violate the rule of statutory construction that the legislature is never presumed to do a useless act. . . . Accordingly, we hold Article 7.12 bars resort to the trust fund theory as it exists apart from the statute.

*Hunter,* 620 S.W.2d at 551 (emphasis added) (citations omitted).

### ANALYSIS

In her single issue on appeal, Arredondo argues the trial court erred by granting summary judgment on the unlawful acts doctrine because in this case that doctrine is preempted by the wrongful death act and section 93.001.

### A. Wrongful Death Act

We begin with the wrongful death act. Arredondo makes two arguments in support of her contention that the wrongful death act abrogates the common law unlawful acts doctrine.

#### 1. Section 71.002

■ First, Arredondo contends that section 71.002 creates a cause of action for wrongful death "irrespective of anything outside 'this section,' including the [Unlawful] Acts doctrine." Arredondo argues her petition alleged the statutory elements of subsection 71.002(b) that Dugger's negligence caused Martinez's death. Thus, she asserts, she has a "viable cause of action for wrongful death as a matter of law." She contends the trial court erred by granting summary judgment because the wrongful death statute controls over the common law unlawful acts doctrine.

A statutory wrongful death claim is wholly derivative of the decedent's claim and is subject to any defense that would have been available against the decedent had they survived. *In re Golden Peanut Co., L.L.C.*, 298 S.W.3d 629, 631 (Tex.2009) (wrongful death beneficiaries are bound by decedent's pre-death arbitration agreement "because, under Texas law, the wrongful death cause of action is entirely derivative of the decedent's rights"). If the unlawful acts doctrine would have barred Martinez's claims had he survived, it would also bar the statutory wrongful death claim of his beneficiaries, i.e., Arredondo. *See Russell v. Ingersoll–Rand Co.*, 841 S.W.2d 343, 344 (Tex.1992) (wrongful death and survival causes of action barred by limitations where decedent's personal injury cause of action would have been barred by limitations at the time of his death). Thus, there is nothing in section 71.002 that is inconsistent with the applicability of the common law unlawful acts doctrine.

### 2. Section 71.006

■ Second, Arredondo argues the unlawful acts doctrine is abrogated by section 71.006, which provides that a wrongful death action "is not precluded because the death is caused by a felonious act or because there may be a criminal proceeding in relation to the felony." TEX. CIV. PRAC. & REM.CODE ANN. § 71.006. Resolving this argument requires a review of the origin and history of the wrongful death statute and the language referring to a felonious act.

At common law, there was no recognized cause of action for wrongful death. *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 356 (Tex.1990). The English decision in *Baker v. Bolton*, 1 Camp. 493, 170 Eng. Rep. 1033 (1808), is generally cited for the common law doctrine "that in a civil court the death of a human being cannot be complained of as an injury." *Galveston, Harrisburg & San Antonio RR. v. Le Gierse*, 51 Tex. 189, 1879 WL 7659, at *6 (1879) (quoting *Baker*). "This [doctrine] was probably founded upon the generally received opinion that the civil remedy was merged into the felony which, at common law, worked a forfeiture of property, and that a personal action dies with the person." *Id.* The rule that the civil remedy is merged into the felony is commonly referred to as the felony-merger doctrine.[7]

In 1846, the English Parliament responded to criticism of the common law rule prohibiting civil claims for wrongful death by passing Lord Campbell's Act. *See* Fatal Accidents Act, 1846, 9 & 10 Vict., c. 93 (Eng.). The Act created a civil claim for damages for death caused by wrongful act, neglect or default:

> [T]he person who would have been liable if Death had not ensued shall be liable to an Action for Damages, notwithstanding the Death of the Person injured, and *although the Death shall have been caused under such Circumstances as amount in Law to Felony.*

*Id.* (emphasis added) (quoted in Wex S. Malone, *The Genesis of Wrongful Death*, 17 STAN. L.REV. 1043, 1058 (1965)). It

---

7. Legal historians have generally concluded that the only substantial basis for the common law rule against recovery for wrongful death was the early English felony-merger doctrine. *See Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 382, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970). According to the felony-merger doctrine, the tort was considered less important than the offense against the Crown, and was merged into, or preempted by, the felony. *Id.* Because all intentional or negligent homicides were felonies, there could be no civil suit for wrongful death. *Id.* The practical justification for the felony-merger doctrine was that the punishment for the felony was death *and* forfeiture of the felon's property to the Crown, leaving nothing on which to base a civil action. *Id.*

appears the drafters of the statute included the emphasized language in order to negate the application of the felony-merger doctrine in wrongful death actions. *See* Malone, *supra*, at 1058 ("It seems clear, therefore, that the draftsmen, even at this later date, were satisfied that the felony[-]merger doctrine was accepted law.").

Significantly, the felony-merger doctrine was never accepted in the United States. *Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 384–85, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970). Instead, Lord Campbell's Act was adopted as the basis for wrongful death statutes throughout the United States, and it served as the basis for the original Texas wrongful death statute adopted in 1860. *See Moreno*, 787 S.W.2d at 356 n. 7; *Le Gierse*, 51 Tex. at 199, 1879 WL 7659, at *6. That statute provided that when

the death of any person may be caused by wrongful act, neglect, unskilfulness or default, and the act, neglect, unskilfulness or default is such as would (if death had not ensued) have entitled the party, injured, to maintain an action for such injury, then and in every such case the person who would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, *and although the death shall have been caused under such circumstances as amount, in law, to a felony.*

Act approved Feb. 2, 1860, 8th Leg., R.S., ch. 35, § 1, 1860 Tex. Gen. Laws 32, 32, *reprinted in* 4 H.P.N. Gammel, THE LAWS OF TEXAS 1822–1897, at 1394 (Austin, Gammel Book Co. 1898) (emphasis added).

Soon after adoption of the wrongful death act, the Texas Constitution was amended to recognize a right to recover exemplary damages for homicide caused by a willful act or omission or gross neglect, "without regard to any criminal proceeding that may or may not be had in relation to the homicide." TEX. CONST. art. XVI, § 26.[8] This provision was adopted to address uncertainties in the common law and the statute regarding exemplary damages. *See Traveler's Indem. Co. of Ill. v. Fuller*, 892 S.W.2d 848, 850–51 (Tex.1995) (purpose of constitutional provision "was the resolution of ambiguities existing in the statutory and common law of punitive damages").[9]

In summary, the wrongful death cause of action is a statutory creation altering the common law rule. *See Moreno*, 787 S.W.2d at 356. In Texas, the structure and history of the wrongful death act and the constitution indicate they were designed to avoid application of the felony-merger doctrine and to make actual and punitive damages available in wrongful death cases without regard to criminal proceedings against the defendant.[10] The focus of the statutory and constitutional

---

**8.** A similar provision was contained in the constitution of 1869. *See Le Gierse*, 51 Tex. 189, 1879 WL 7659, at *6.

**9.** The supreme court explained the purpose of this constitutional provision:

A prominent common law decision refusing to allow recovery for wrongful death did so on the basis that a death is solely a criminal matter and not cognizable in a civil court. *See Baker v. Bolton*, 1 Camp. 493, 170 Eng. Rep. 1033 (1808). Further, a division of authority existed in the middle and late 19th century concerning whether punitive

damages were recoverable when the same wrong was punishable in a criminal proceeding. *See* W. EGGLESTON, EGGLESTON ON DAMAGES § 47 (1880); J. SUTHERLAND, 1 SUTHERLAND ON DAMAGES Ch. IX, p. 738 (1883). Article 16, Section 26 confronted these enigmas by making punitive damages recoverable "without regard to any criminal proceeding that may or may not be had in relation to the homicide." TEX. CONST. ANN. art. 16, § 26 (Vernon 1993).

*Fuller*, 892 S.W.2d at 850–51.

**10.** The penal code expressly states that a civil injury does not merge into the criminal of-

provisions is the felonious conduct of—or criminal proceedings against—the wrongful death defendant. Nothing in this language or history indicates that the decedent's conduct in causing his own death was not to be considered in a wrongful death action.

Arredondo cites no authority for her position and, contrary to her assertion, at least one early case applied the unlawful acts doctrine to bar a wrongful death lawsuit. *See House v. Blum,* 56 S.W. 82, 83 (Tex.Civ.App.-Galveston 1900, no writ) (citing *Johnson* ). There, a minor child was run over and killed by a train while he and several other boys were illegally jumping on and off the slow-moving train. *Id.* The child's mother filed suit against the railroad company for negligence to recover damages resulting from the child's death. *Id.*

At that time the penal code made it a misdemeanor for any person to board a train without good faith intent to become a passenger, with intent to obtain a free ride, and without consent of the person in charge of the train. *Id.* The evidence showed that the railroad employees tried to keep the boys from jumping on the train, and the deceased had been told to get off the train at least once, but he jumped back on the train before he fell and was killed. *Id.* at 84.

The jury found for the plaintiff. On appeal, the court of civil appeals stated the "evidence shows that the illegal act of [the]

deceased in jumping on appellant's train directly contributed to his injury, and, if it shows any negligence whatever on the part of appellant's employees, it certainly fails to disclose any intentional act of negligence on their part evidencing a willful or reckless disregard for the safety of deceased." *Id.*[11] The court reversed and remanded, holding that Texas follows the general rule that "no action to recover damages will lie if plaintiff, in order to establish his claim, is aided by an illegal transaction in which he participates, or in any manner depends upon such illegal act...." *Id.* at 83 (citing *Johnson,* 9 S.W. at 603). The court did not discuss any conflict between the unlawful acts doctrine and the wrongful death statute.

We decline to read section 71.006 as superseding the unlawful acts doctrine.

### 3. Conclusion

Accordingly, we reject Arredondo's contention that the common law unlawful acts doctrine is abrogated by the wrongful death act.

### B. Section 93.001

The legislature in 1987 and again in 1995 enacted statutes dealing with civil suits brought by convicted criminals seeking to recover damages arising out of the commission of the crime. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 86.002, 93.001. Arredondo argues that one of these statutes, section 93.001, abrogates the common law unlawful acts doctrine.

---

fense. TEX. PENAL CODE ANN. § 1.03(c) (West 2010) ("This code does not bar, suspend, or otherwise affect a right or liability to damages, penalty, forfeiture, or other remedy authorized by law to be recovered or enforced in a civil suit for conduct this code defines as an offense, and the civil injury is not merged in the offense."). Further, a criminal conviction does not work a forfeiture of estate. TEX. CONST. art. I, § 21 ("No conviction shall work corruption of blood, or forfeiture of estate, and the estates of those who destroy their

own lives shall descend or vest as in case of natural death.").

11. As the appellate court recognized, the railroad could still be liable if its employees were "guilty of such intentional wrong as to render their negligence a willful disregard of their duty to deceased." *Id.* The court also noted that the deceased, "being over the age of 13 years, must be held responsible for his criminal acts, unless shown to be *non compos mentis.*" *Id.* at 83.

Section 93.001 provides that it is an affirmative defense to a civil action for damages for personal injury or death that the plaintiff, at the time the cause of action arose, was "committing a felony, for which the plaintiff has been finally convicted, that was the sole cause of the damages sustained by the plaintiff." *Id.* § 93.001(a)(1). Subsection (b) excepts from section 93.001 certain actions not applicable here.[12] Further, "[i]n an action to which this section applies, this section shall prevail over any other law." *Id.* § 93.001(c).

Section 86.002[13] provides: "A claimant who has been convicted of a felony or misdemeanor may not recover damages for an injury sustained during the commission of the felony or misdemeanor if the injury would not have been sustained but for the commission of the felony or misdemeanor."

*See* Tex. Civ. Prac. & Rem.Code Ann. § 86.002(a). Section 86.002 also applies to derivative claims, such as wrongful death claims. *See id.* § 86.003.

These statutes—sections 93.001 and 86.002—show a legislative intent that persons *convicted of crimes* may not recover damages for injuries caused by their own criminal conduct. In contrast, the unlawful acts doctrine does not require that the plaintiff be finally convicted of a criminal offense.[14] Thus, the statutory defenses require more than does the common law unlawful acts doctrine; namely (and as relevant here), that the plaintiff be convicted of a crime that caused his or her injury or damages.[15]

Although many cases have applied the unlawful acts doctrine when the plaintiff has been convicted of a crime,[16] other

---

**12.** Subsection 93.001(b) states that the section does not apply in an action brought by an employee or his beneficiaries under the workers' compensation law nor to any action against an insurer based on a contract of insurance, a statute, or common law. *Id.* § 93.001(b).

**13.** In her briefing, Arredondo does not rely on section 86.002 to support her preemption argument. However, we also consider that section in determining the legislature's intent with respect to section 93.001 because it is a law on the same subject. *See* Tex. Gov't Code Ann. § 311.023; *McIntyre,* 109 S.W.3d at 745.

**14.** *See Sharpe,* 191 S.W.3d at 366.

**15.** There are, of course, other differences between the statutory and common law defenses. For example, subsection 93.001(a)(1) requires that the felony be the *"sole cause"* of the damages sustained by the plaintiff," Tex. Civ. Prac. & Rem.Code Ann. § 93.001(a)(1) (emphasis added), while the unlawful acts doctrine requires *proximate cause* or that the unlawful act was *inextricably intertwined* with the claim, *see Johnson,* 9 S.W. at 603; *Price,* 269 S.W. at 428; *Sharpe,* 191 S.W.3d at 366. Subsection 86.002(a) requires that the injury "would not have been sustained *but for* the commission of the felony or misdemeanor."

Tex. Civ. Prac. & Rem.Code Ann. § 86.002(a) (emphasis added). We need not resolve these differences in this case.

**16.** *See Bruder v. State,* 601 S.W.2d 102, 103 (Tex.Civ.App.-Dallas 1980, no writ) (assignee of convicted briber had no greater right to recover bribe money than assignor, whose claim was barred by unlawful acts doctrine); *Ward v. Emmett,* 37 S.W.3d 500, 503 (Tex. App.-San Antonio 2001, no pet.) (plaintiff convicted of murdering her mother was barred from recovering on medical malpractice and other claims because all her damages arose from the murder); *Saks v. Sawtelle, Goode, Davidson & Troilo,* 880 S.W.2d 466, 470 (Tex. App.-San Antonio 1994, writ denied) (legal malpractice claim barred because plaintiff convicted of bank fraud); *Dover v. Baker, Brown, Sharman & Parker,* 859 S.W.2d 441, 451 (Tex.App.-Houston [1st Dist.] 1993, no pet.) (legal malpractice claim barred because plaintiff convicted of tax fraud); *see also Peeler v. Hughes & Luce,* 868 S.W.2d 823, 831–32 (Tex.App.-Dallas 1993) (plaintiff convicted for tax fraud unable to prove causation in her legal malpractice suit against her criminal defense counsel without first showing she had been exonerated of the crime), *aff'd,* 909 S.W.2d 494 (Tex.1995) ("We therefore hold that, as a matter of law, it is the illegal con-

cases have applied the doctrine without mentioning a conviction.[17] No case has resolved how section 93.001 or section 86.002 relate to the unlawful acts doctrine.[18]

Thus, we are presented with the question of whether the more specific statutory defenses leave room for the existence of the more general common law defense. Arredondo contends that applying the unlawful acts doctrine to bar her claim would render section 93.001 unnecessary and meaningless. She argues that if the unlawful acts doctrine barred her claim, there would be no reason for the legislature to have enacted section 93.001 because the effect of the statute—to prevent convicted felons from benefitting from their own crime—would already have been achieved under the common law. She also argues the summary judgment cannot be

supported on public policy grounds because the legislature determines the public policy of the state, and the statutes allow her to bring a wrongful death and survival claim regardless of the unlawful acts doctrine unless the affirmative defense in section 93.001 is established.

As illustrated in *Hunter* (the supreme court's equitable trust fund theory case), we must presume the legislature knew, when it enacted section 93.001, the extent to which the unlawful acts doctrine already provided a defense against plaintiffs whose unlawful conduct caused their injuries. *See Hunter*, 620 S.W.2d at 551. No purpose would be served by enacting section 93.001 unless the legislature intended to bar resort to the unlawful acts doctrine in those cases where the statute applies. *See id.* To conclude otherwise would violate the rule that the legislature is never pre-

---

duct rather than the negligence of a convict's counsel that is the cause in fact of any injuries flowing from the conviction, unless the conviction has been overturned.").

**17.** *See Denson v. Dallas Cnty. Credit Union*, 262 S.W.3d 846, 855 (Tex.App.-Dallas 2008, no pet.) ("We agree with the Credit Union that the [unlawful acts] rule applies and bars appellants' claims arising in tort because they are inextricably intertwined with their illegal contract to sell automobiles in Dallas County without a license."); *Sharpe*, 191 S.W.3d at 369 ("Because [Sharpe's] conduct in removing the Diocese's items from Diocesan property without its permission is the foundation of his allegation that he has a superior right to the items and that alleged right is the basis of his fraud claim against Turley, the trial court properly granted summary judgment in favor of Turley [under the unlawful acts doctrine]."); *Stevens v. Hallmark*, 109 S.W.2d 1106, 1106 (Tex.Civ.App.-Austin 1937, no writ) (plaintiff's admittedly illegal possession of 129 cases of beer for resale in a dry county barred his suit to recover the beer after it was seized by sheriff under search warrant); *Heard v. Denman*, 29 S.W.2d 824, 824 (Tex. Civ.App.-Austin 1930, no writ) (suit to recover money paid to bribe deputies not to testify was barred by plaintiff's admittedly illegal act

even though bribery case was still pending); *House v. Blum*, 56 S.W. 82, 84 (Tex.Civ.App.-Galveston 1900, no writ) (wrongful death judgment reversed where evidence showed decedent's unlawful act of jumping on defendant's train to obtain a free ride directly contributed to his injury).

**18.** The Fifth Circuit has discussed the Texas unlawful acts doctrine and section 93.001 in a case involving improper joinder, but concluded "there remains substantial uncertainty about the relationship of section 93.001 to the unlawful acts rule. This uncertainty supports our conclusion that the district court's finding of improper joinder was in error." *Rico v. Flores*, 481 F.3d 234, 241 (5th Cir.2007). The court in *Ward* discussed both the unlawful acts doctrine and section 93.001 without mentioning a conflict between them, but concluded that despite the ambiguous nature of plaintiff's claimed damages, those damages arose out of the murder for which she had been convicted and the damage claims were barred under either the unlawful acts doctrine or section 93.001. *See Ward v. Emmett*, 37 S.W.3d 500, 503 (Tex.App.-San Antonio 2001, no pet.); *see also Rico*, 481 F.3d at 241 n. 5 ("The court of appeals' analysis [in *Ward*], however, was not especially searching.").

sumed to do a useless act. *See id.* Accordingly, we conclude the legislature intended to revise the common law unlawful acts doctrine to the extent it differs from section 93.001. Thus, section 93.001 bars resort to the unlawful acts doctrine in a manner contrary to the terms of the statute. *See id.*

Because section 93.001 applies to Arredondo's claim, and because Dugger did not prove as a matter of law that Martinez, at the time the cause of action arose, was "committing a felony, for which [he] has been finally convicted, that was the sole cause of the damages" he sustained, *see* Tex. Civ. Prac. & Rem.Code Ann. § 93.001(a)(1), the trial court erred by granting summary judgment.

Dugger contends Arredondo's argument is based on the false premise that by adopting section 93.001 the legislature intended to abrogate or preempt the unlawful acts doctrine. In support, he cites the statement of the San Antonio Court of Appeals in *Ward* that section 93.001 provided an affirmative defense similar to the unlawful acts doctrine. *See Ward,* 37 S.W.3d at 502. In *Ward,* the nature of the plaintiff's alleged damages was unclear.[19] However, it was clear that the plaintiff had been finally convicted of the murder and her damages arose from that crime. *Id.* at 501. Thus, even if the conflict between section 93.001 and the common law was raised by the parties (and there is no indication in the opinion that it was), it was unnecessary for the court to discuss any conflict between the statute and the doctrine.

■ Moreover, it is the similarity between the statute and the common law doctrine that leads to the conclusion that the legislature intended the statute to op-

erate *over* the common law in similar situations. The specific requirements of the statute must be given effect over the general principles of the common law doctrine. Otherwise, the similar common law doctrine would swallow the statute. "Where the common law is revised by statute, the statute controls." *Tex. Workers' Compensation Ins. Fund v. Del Indus., Inc.,* 35 S.W.3d 591, 596 (Tex.2000) (quoting *Bartley v. Guillot,* 990 S.W.2d 481, 485 (Tex. App.-Houston [14th Dist.] 1999, pet. denied)).

Dugger also contends a statute should not be interpreted to abrogate a common law principle unless the statutory intent to do so is clearly indicated by the express terms of the statute or by necessary implication, citing *Cash America International, Inc. v. Bennett,* 35 S.W.3d 12, 16 (Tex. 2000) and *Bruce v. Jim Walters Homes, Inc.,* 943 S.W.2d 121, 122–23 (Tex.App.-San Antonio 1997, writ denied). We recognize this rule of statutory construction, but conclude the legislature *did express* in the terms of section 93.001 that in an action where the section applies, it prevails over any other law. Tex. Civ. Prac. & Rem.Code Ann. § 93.001(c). While the statute does not expressly mention the unlawful acts doctrine, the statute expresses the legislature's unequivocal intent that it—and not any other law—prevails whenever the statute applies. *Id.; see Del Indus.,* 35 S.W.3d at 596 ("The common law has been dramatically engrafted upon by the legislature. Where the common law is revised by statute, the statute controls.").

Dugger argues the strong public policy behind the unlawful acts doctrine prevents the implication that section 93.001 abrogates the unlawful acts doctrine. This ar-

---

**19.** *See Ward,* 37 S.W.3d at 503 ("Despite the ambiguous nature of Ward's claimed damages, Ward's claims are for damages that arose from the murder she committed.... More simply, Ward would have suffered none of her alleged injuries in the absence of her mother's murder.").

gument ignores the text of section 93.001 discussed above. Moreover, the legislature has the power to set public policy. *FM Props. Operating Co. v. City of Austin,* 22 S.W.3d 868, 873 (Tex.2000) ("In Texas, legislative power is defined broadly. It includes the power to set public policy."). Subject to constitutional limitations, the public policy of the state may be changed by the legislature at any time. *State v. City of Austin,* 160 Tex. 348, 331 S.W.2d 737, 741 (1960). Thus, the specific public policy established by the express language of section 93.001 controls over the general policy supporting the unlawful acts doctrine.

■ Additionally, Dugger can claim no vested right in the general common law rule to defeat that policy. "[N]o one has any vested or property interest in the rules of the common law, and therefore no one is deprived of a constitutional right by their change through legislative enactment." *Middleton v. Tex. Power & Light Co.,* 108 Tex. 96, 185 S.W. 556, 561 (1916) (upholding constitutionality of workers' compensation act).[20]

Dugger argues section 93.001 applies only "to those civil actions for damages for personal injury or death in which the sole cause of the damages was either (1) the claimant's commission of a felony for which the claimant was finally convicted, or (2) the claimant having committed or attempted to commit suicide." *Id.* § 93.001(a)(1), (2). Because neither situation applies in this case, Dugger contends that section 93.001 cannot apply to preempt his common law defense under the unlawful acts doctrine.

But this argument rewrites section 93.001(a) and ignores subsections (b) and (c). The language and structure of subsection (a) indicates there is a distinction between the action to which section 93.001 applies and the elements of the affirmative defense that must be proved to establish the statutory affirmative defense.[21] Nor may we ignore subsection (b), by which the legislature expressly excluded certain actions from the scope of section 93.001.[22] The legislature then indicated its intent— via subsection (c)—that section 93.001 prevails over any other law in "an action to which this section applies." *Id.* § 93.001(c). That is, section 93.001 applies to—and prevails over any other law in—all civil actions for damages for personal injury or death other than those circumstances excepted from the statute by the legislature.

Dugger contends the unlawful acts doctrine does not make section 93.001 unnecessary or meaningless because the legislature can enact statutes in an area normally covered by common law rules. He refers

---

20. In any event, section 93.001 was effective before Arredondo's cause of action arose.

21. Subsection 93.001(a) provides:
 (a) It is an affirmative defense to a *civil action for damages for personal injury or death* that the plaintiff, at the time the cause of action arose, was:
 (1) committing a felony, for which the plaintiff has been finally convicted, that was the sole cause of the damages sustained by the plaintiff; or
 (2) committing or attempting to commit suicide, and the plaintiff's conduct in committing or attempting to commit suicide was the sole cause of the damages

sustained; provided, however, if the suicide or attempted suicide was caused in whole or in part by a failure on the part of any defendant to comply with an applicable legal standard, then such suicide or attempted suicide shall not be a defense. TEX. CIV. PRAC. & REM.CODE ANN. § 93.001(a) (emphasis added).

22. "This section does not apply in any action brought by an employee, or the surviving beneficiaries of the employee, under the Workers' Compensation Law of Texas, or in an action against an insurer based on a contract of insurance, a statute, or common law." TEX. CIV. PRAC. & REM.CODE ANN. § 93.001(b).

to common law vehicle and highway safety rules and the transportation code, and asserts, "The mere codification of the rules governing highway safety does not mean that the common law rules are preempted." Dugger cites no authority for this proposition, and we do not find it helpful, especially in light of the language of subsection (c). As we have said, where the common law is modified by statute, the statute controls. *See Del Indus.*, 35 S.W.3d at 596.

Dugger says section 93.001 merely provides a "bright line" affirmative defense "for those Defendants who are sued by Plaintiffs who are convicted of felonies, and who later attempt to recover damages from the Defendants in a civil case." But again, the statutory defense would be unnecessary if the defendant could obtain the same defense under the unlawful acts doctrine *without* the additional elements of proof required by section 93.001. The statute would be meaningless—at least for cases within the scope of section 93.001—unless the legislature intended to replace the existing unlawful acts doctrine with the specific requirements of the statute. *See Hunter*, 620 S.W.2d at 551.[23]

Dugger also argues that section 93.001 and the unlawful acts doctrine can coexist, but he cites no authority other than the statement in *Ward* that the two are similar. Whether the common law unlawful acts doctrine still applies to actions *other than* civil actions for damages for personal injury or death is not an issue before us. Here, Arredondo *is* seeking only damages for personal injury or death.[24] Thus, her civil action falls within the scope of section 93.001(a) and does not fall within the exclusions in subsection 93.001(b). We need not and do not decide whether section 93.001 precludes application of the unlawful acts doctrine in cases asserting claims for damages other than for personal injury or death.[25]

Dugger cites several other cases discussing the unlawful acts doctrine and the policy behind it, but those cases were either decided before the enactment of section 93.001 [26] or do not mention section 93.001.[27] Thus, those cases are distin-

---

**23.** We also do not see how Dugger's argument that section 93.001 is an absolute defense adds to his position. The unlawful acts doctrine is just as absolute as section 93.001; where the doctrine has been applied, it has been an absolute defense to a plaintiff's cause of action. *See, e.g., Denson*, 262 S.W.3d at 855; *Sharpe*, 191 S.W.3d at 366. Dugger's argument that the unlawful acts doctrine is not preempted because section 93.001 provides an absolute defense is not persuasive.

**24.** Arredondo's original petition seeks to recover personal injury damages for Martinez under the survival statute and wrongful death damages under the wrongful death act.

**25.** And again, we express no opinion on the impact of chapter 86 on the unlawful acts doctrine because the parties have not briefed the issue and it is not necessary to the resolution of this appeal. *See* Tex.R.App. P. 47.1.

**26.** *See Lewis v. Davis*, 145 Tex. 468, 199 S.W.2d 146, 151 (1947) (discussing in pari delicto doctrine and illegal transaction defense, but concluding trial court should have presumed parties intended to comply with existing law when entering into contract); *Gulf, C. & S.F. Ry. Co. v. Johnson*, 71 Tex. 619, 9 S.W. 602, 603 (1888); *Graphilter Corp. v. Vinson*, 518 S.W.2d 952, 954 (Tex.Civ.App.-Dallas 1975, writ ref'd n.r.e.); *Stevens v. Hallmark*, 109 S.W.2d 1106, 1106 (Tex.Civ.App.-Austin 1937, no writ); *Houston Ice & Brewing Co. v. Sneed*, 63 Tex.Civ.App. 17, 132 S.W. 386, 388 (Tex.Civ.App.-Texarkana 1910, writ dism'd).

**27.** *See Fuentes v. Alecio*, No. C–06–425, 2006 WL 3813780, at *3 (S.D.Tex. Dec. 26, 2006) (dismissing negligence and breach of contract claims by survivors of illegal alien who died while trying to enter the United States; section 93.001 is not mentioned in the opinion and the preemption argument was not addressed); *Sharpe*, 191 S.W.3d at 366; *Macias v. Moreno*, 30 S.W.3d 25, 29 (Tex.App.-El Paso 2000, pet. denied); *Duncan Land & Ex-*

guishable.[28]

We express no opinion on whether the unlawful acts doctrine is preempted in cases other than civil actions to which section 93.001 applies. However, where it applies, as it does here, it cannot coexist with any contrary law—it "prevails over any other law." TEX. CIV. PRAC. & REM.CODE ANN. § 93.001(c). Because section 93.001 includes elements of proof—a final conviction for a felony that was the sole cause of the damages—that the unlawful acts doctrine does not, the section cannot coexist with the common law doctrine with respect to claims covered by the statute. We sustain that part of Arredondo's issue that argues the unlawful acts doctrine does not apply in this case because of the application of section 93.001. We overrule the remainder of the issue.

### CONCLUSION

Because the unlawful acts doctrine is inapplicable to Arredondo's claims and because Dugger did not establish the elements of the affirmative defense under subsection 93.001(a)(1), the trial court erred by granting summary judgment. Accordingly, we reverse the trial court's order granting Dugger's motion for summary judgment and remand for further proceedings.

ploration, Inc. v. Littlepage, 984 S.W.2d 318, 328 (Tex.App.-Fort Worth 1998, pet. denied); Saks v. Sawtelle, Goode, Davidson & Troilo, 880 S.W.2d 466 (Tex.App.-San Antonio 1994, writ denied); Rodriquez v. Love, 860 S.W.2d 541 (Tex.App.-El Paso 1993, no pet.); Dover v. Baker, Brown, Sharman & Parker, 859 S.W.2d 441 (Tex.App.-Houston [1st Dist.] 1993, no pet.).

28. We have applied the unlawful acts doctrine in two recent cases. See Denson, 262 S.W.3d at 855; Sharpe, 191 S.W.3d at 369. Neither case was a civil action for damages for personal injury or death; thus, section 93.001 did not apply. In neither case did the parties raise the application of chapter 86. Thus our decision today is not inconsistent with those opinions.