# IN THE SUPREME COURT OF TEXAS

════════════
No. 11-0549
════════════

GEOFFREY DUGGER, PETITIONER,

v.

MARY ANN ARREDONDO, INDIVIDUALLY AND AS REPRESENTATIVE OF THE
ESTATE OF JOEL MARTINEZ, DECEASED, RESPONDENTS

═══════════════════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FIFTH DISTRICT OF TEXAS
═══════════════════════════════════════════════════════════

JUSTICE HECHT, joined by JUSTICE WILLETT and JUSTICE DEVINE, dissenting.

Given that we have repeatedly refused to hold a social host liable for providing alcohol to a guest,[1] one will wonder why we are engaging in the unlikely assumption that a social host may be liable for not preventing a guest from overdosing on his own heroin. The answer is that the parties have agreed to argue only the applicability of the common-law unlawful acts doctrine as a defense to liability, assuming some duty of care exists.[2] The viability of the common-law doctrine is so

---

[1] *Reeder v. Daniel*, 61 S.W.3d 359, 364-365 (Tex. 2001) (social host has no duty not to make alcohol available to minors); *Smith v. Merritt*, 940 S.W.2d 602, 605 (Tex. 1997) (social host has no duty to passenger to prevent nineteen-year-old guest from drinking and driving); *Graff v. Beard*, 858 S.W.2d 918, 921-922 (Tex. 1993) (social host has no duty to third party to prevent adult guest from drinking and driving).

[2] 347 S.W.3d 757, 760 n.2 ("Dugger's motion [for summary judgment] also . . . attack[ed] the elements of Arredondo's claims. By a rule 11 agreement at the trial court, the parties submitted to the trial court only the unlawful acts doctrine defense . . . .").

conjectural in this case, we ought to leave the issue for another day.[3] But the Court holds that the doctrine has been abrogated by statute — specifically, by the comparative responsibility scheme in Chapter 33 of the Texas Civil Practice and Remedies Code, and by a statute on the affirmative defense of assumption of the risk, Section 93.001 of the Code.[4]

Correctly understood, the unlawful acts doctrine has nothing to do with comparative fault. A plaintiff who kills himself by ingesting too much of a substance he knows or should know is toxic is at fault irrespective of whether his actions are illegal. The doctrine holds that in some instances a plaintiff whose injuries are directly caused by conduct in which he was forbidden by law to engage is not entitled to assert a claim for damages against someone whose fault may also have caused the injury. Confusing felonies with tortious conduct, as the Court does, ends up treating heroin like aspirin.[5]

Section 93.001, the other basis for today's ruling, is nothing more than the Legislature's reaffirmation that the unlawful acts doctrine applies specifically when the plaintiff or her decedent was not only engaged in criminal conduct but was also convicted of the crime.[6] Nothing in the

---

[3] *See, e.g.*, *Valenzuela v. Aquino*, 853 S.W.2d 512, 514 (Tex. 1993) (refusing to consider the possibility of a defense to liability not yet established).

[4] All statutory references are to the Texas Civil Practice & Remedies Code unless otherwise noted.

[5] The Court's conclusion that Chapter 33 supplants the common-law unlawful acts doctrine may surprise the parties, since they mentioned Chapter 33 only in a few sentences in the trial court, not at all in the court of appeals, and in a total of three pages of briefing in this Court.

[6] *See Lord v. Fogcutter Bar*, 813 P.2d 660, 662 n.9 (Alaska 1991) (citing, as support for applying the unlawful acts doctrine, a statute providing that a "person who suffers personal injury or death may not recover damages . . . if the injuries or death occurred while the person was engaged in the commission of a felony, the person has been convicted of the felony, including conviction based on a guilty plea or plea of nolo contendere, and the felony substantially contributed to the injury or death").

2

statutory text suggests that it was intended to abrogate the broader common-law defense. The Court interprets the statute as limiting the defense to certain situations — when nothing suggests that it does — thereby rendering the statute largely ineffectual, even in the situations it purports to cover. It defies reason to think that the Texas Legislature in 1987 intended to make it easier for criminals to recover damages for injuries they caused themselves while committing illegal acts.[7]

Accordingly, I respectfully dissent.

Before turning to the legal issues, we should have the facts in mind. Geoffrey Dugger, 25 at the time, and Joel Martinez, 21, friends for several years, decided to spend Friday evening together doing what they often did: drinking alcohol, smoking marijuana, and snorting "cheese" — black tar heroin mixed with Tylenol PM®. Martinez lived with his mother, Mary Ann Arredondo, and stepfather in their home. When Dugger drove over to pick him up, Martinez was drinking a beer and said he had been snorting cheese. Dugger saw Martinez put three or four baggies of black tar heroin in his pocket, and as they left, Martinez asked Arredondo for Tylenol for a headache. On the way to Dugger's parents' home, where Dugger lived, he and Martinez stopped to buy a fifth of tequila and cigars to fill with the marijuana they had. On arrival, they visited with Dugger's parents a few minutes, then went to his bedroom where they spent the evening watching television, listening to music, eating pizza, drinking tequila, and snorting cheese. At one point, they went out in the backyard and smoked marijuana.

As midnight approached, Martinez complained that he did not feel well. He drank a little

---

[7] Act of May 31, 1987, 70th Leg., R.S., ch. 824, 1987 Tex. Gen. Laws 2856.

water and fell asleep. Not long after, he began to make a gurgling sound as if he were trying to vomit, and Dugger could not wake him. Alarmed, Dugger called down the hall to his parents. Dugger called Martinez's mother, Arredondo, but Dugger told her only that Martinez was throwing up, and that he and Martinez had been drinking, not that they had been using drugs. But eight minutes later, Dugger's mother called Arredondo to tell her to come immediately, and that Martinez looked like he was dying. Arredondo arrived only five or six minutes later. Dugger's father called 9-1-1. Police and paramedics arrived within a few minutes, but Dugger did not tell them, either, that Martinez had been using drugs. Martinez never revived and died about an hour later at the hospital.

Arredondo sued Dugger almost two years later, alleging that Dugger was negligent in allowing Martinez into his parents' home "to consume dangerous quantities of illegal substances that [Dugger] knew or should have known could foreseeably result in serious bodily injury and/or death to [Martinez]", in failing to timely call 9-1-1, and in failing to disclose Martinez's drug consumption to Arredondo and the police and paramedics.

The common law regarding a criminal's entitlement to the benefits and protections of the law has evolved over centuries. Pollock and Maitland explain that before the Norman Conquest, it was decreed of outlaws, *caput gerat lupinum*:

> He who breaks the law has gone to war with the community; the community goes to war with him. It is the right and duty of every man to pursue him, to ravage his land, to burn his house, to hunt him down like a wild beast and slay him; for a wild beast he is; not merely is he a 'friendless man,' he is a wolf.[8]

---

[8] 2 FREDERICK POLLOCK & FREDERIC MAITLAND, THE HISTORY OF ENGLISH LAW BEFORE THE TIME OF EDWARD I 449 (2d ed. Cambridge University Press 1899).

Outlawry was banned by the Magna Charta[9] and by the thirteenth century "had lost its exterminating character",[10] but the law remained draconian: "[o]f every proprietary, possessory, contractual right [the outlaw] is deprived".[11] In time, outlawry rightly came to be regarded as barbaric.[12] Outlawry is prohibited by the Texas Constitution.[13]

But while the law has come to take a measured view of what rights should be forfeited as a consequence of illegal conduct, it has retained a resistance to asserting rights based on illegal conduct in certain instances. In Justice Cardozo's words, there remains, "deeply fastened in universal sentiments of justice, the principle that no man should profit from his own inequity or take advantage of his own wrong."[14] The Latin maxim, *ex turpi causa non oritur actio*, expresses a similar idea. Thus, the law restricts recovery on illegal contracts,[15] and while the principle's

---

[9] MAGNA CHARTA ch. 39, *translated in* 3 VERNON'S ANNOTATED CONSTITUTION OF THE STATE OF TEXAS 624, 628 (1993) ("No freeman shall be taken or imprisoned, or deseised, or outlawed, or banished, or any ways destroyed, nor will we pass upon him, nor will we send upon him, unless by the lawful judgment of his peers, or by the law of the land.").

[10] 2 POLLOCK & MAITLAND, *supra* note 8, at 449.

[11] 1 *id.* at 477.

[12] 2 *id.* at 450.

[13] TEX. CONST. art. I, § 20 ("No citizen shall be outlawed."). *See In re J.W.T.*, 872 S.W.2d 189, 206-207 (Tex. 1994) (Cornyn, J., dissenting) (tracing the prohibition of outlawry from Magna Charta to article I, section 20 of the Texas Constitution).

[14] BENJAMIN N. CARDOZO, THE NATURE OF THE JUDICIAL PROCESS 41 (Yale University Press 1921).

[15] *Lewis v. Davis*, 199 S.W.2d 146, 151 (Tex. 1947); *see also* RESTATEMENT (SECOND) OF CONTRACTS ch. 8, intro. note (1981) (addressing courts' willingness to refuse to enforce contracts on grounds of public policy, including discouraging undesirable conduct such as illegality).

application to tort law has become controversial,[16] at the beginning of the twentieth century, it was "conceded by all, that if an unlawful act was the cause, or concurring cause, of the damage, the action is barred."[17] That was certainly this Court's view in 1888, when it wrote in *Gulf, C. & S.F. Ry. v. Johnson*:

> It may be assumed, as undisputed doctrine, that no action will lie to recover a claim for damages, if to establish it the plaintiff requires aid from an illegal transaction, or is under the necessity of showing or in any manner depending upon an illegal act to which he is a party. . . . In all the cases where a recovery of damages for some injury has been denied upon the ground of vice or illegality in the plaintiff's cause of action, it is upon the principle that the wrong of the plaintiff must have been some act or conduct having the relation to that injury of a cause to the effect produced by it. In those cases where it is shown that, at the time of the injury, the plaintiff was engaged in the denounced or illegal act, the rule is, if the illegal act contributed to the injury, he cannot recover; but, if plaintiff's act did not contribute to the injury, the fact alone that at the time he was engaged in an act in violation of law will not of itself preclude a recovery.[18]

This is what we have called the unlawful acts doctrine.

The doctrine absolutely bars a claim of liability. A court's refusal to enforce an illegal contract is not to benefit or punish either party but to protect public policy in not allowing the law to further an illegal purpose.[19] The application in tort cases serves the same end. When contributory negligence was also an absolute bar to liability, there was little need to invoke the unlawful acts

---

[16] *See, e.g.*, Joseph H. King, *Outlaws and Outlier Doctrines: The Serious Misconduct Bar in Tort Law*, 43 WM. & MARY L. REV. 1011, 1019-1021 (2002); Bruce MacDougall, *Ex Turpi Causa: Should a Defence Arise from a Base Cause?*, 55 SASK. L. REV. 1, 2 (1991); Robert A. Prentice, *Of Tort Reform and Millionaire Muggers: Should an Obscure Equitable Doctrine be Revived to Dent the Litigation Crisis?*, 32 SAN DIEGO L. REV. 53, 57-62 (1995).

[17] Harold S. Davis, *The Plaintiff's Illegal Act as a Defense in Actions of Tort*, 18 HARV. L. REV. 505, 506 (1905).

[18] 9 S.W. 602, 603 (Tex. 1888) (internal citations omitted).

[19] *Lewis*, 199 S.W.2d at 151; *see also* RESTATEMENT (SECOND) OF CONTRACTS, *supra* note15.

doctrine as a defense.[20]   But with the advent of comparative responsibility, the basis for the contributory negligence defense has narrowed: a plaintiff is precluded only from recovering those damages he himself caused.  There has been no corresponding change in the basis for the unlawful acts doctrine: it remains an absolute bar to liability.

For this reason, Chapter 33 expressly does not apply to an action in which the unlawful acts doctrine is invoked.  Section 33.002(a)(1) states in pertinent part: "This chapter applies to . . . any cause of action based on tort in which a defendant, settling person, or responsible third party is found responsible for a percentage of the harm for which relief is sought".  When the unlawful acts doctrine applies, no such party can be found responsible for a percentage of the plaintiff's harm because the plaintiff's action is barred.

The Court seems to think that because Chapter 33 abrogated other common law doctrines that barred recovery based on the plaintiff's conduct, like assumption of the risk, imminent peril, and last clear chance, it also abrogated the unlawful acts doctrine.  But comparative responsibility determines the amount of recovery based on an allocation of fault contributing to injury.  The unlawful acts doctrine holds that the allocation should not be made because any recovery rewards criminal conduct.  This case is a good example.  Assuming, as we must, that Dugger should have called 9-1-1 a few minutes earlier and should have disclosed Martinez's ingestion of heroin, what is his

---

[20] *See* 1 DAN B. DOBBS ET AL., THE LAW OF TORTS § 228, at 816 (2011) ("Before the adoption of comparative negligence systems it would not have mattered whether the court invoked the immoral plaintiff principle or the contributory negligence bar, since both would have barred the plaintiff.  After the adoption of comparative negligence, however, a rule that bars the claim of the immoral plaintiff potentially conflicts with the comparative negligence system of apportionment, which would only reduce damages."); King, *supra* note 16, at 1020 ("The serious misconduct doctrine had essentially the same effect as contributory negligence, and was thus largely subsumed into the broader contributory negligence defense.").

percentage of responsibility? How much should Dugger pay Arredondo for not acting promptly and not being forthcoming when Martinez was prohibited by law from ingesting the drug that killed him? The point is not simply that the question is hard, though it is, and assigning it to a jury makes it no easier. The point is that to award any damages lessens the law's prohibition against the use of heroin.

Now, if a robber slips in a puddle on the bank floor and breaks his leg, he can sue the bank. A rapist who falls in a hole in the victim's backyard can sue for damages.[21] Lest these examples be thought extreme or unlikely, consider this: can a teenager sue a boy who sold him fireworks from which he extracted gunpowder to make a pipe bomb that exploded in his hands? No, in New York, said the New York Court of Appeals in *Barker v. Kallash*.[22] In Texas, after today, the answer is yes.[23]

One criticism of the unlawful acts doctrine, a criticism with substance, is that it does not have

---

[21] *Contrast Lord v. Fogcutter Bar*, 813 P.2d 660, 662 (Alaska 1991) (plaintiff, who was allegedly over-served by defendant before he left with a woman — and was later convicted of kidnapping and raping her — was barred as a matter of public policy from recovering damages resulting from his imprisonment).

[22] 63 N.Y.2d 19, 22-24, 28-29, 468 N.E.2d 39, 40-44 (1984). *Contrast Flanagan v. Baker*, 35 Mass. App. Ct. 444, 449, 621 N.E.2d 1190, 1193 (1993) (a boy injured while constructing a pipe bomb out of fireworks in defendants' basement was not barred from recovery).

[23] *But cf. Peeler v. Hughes & Luce*, 909 S.W.2d 494, 498 (Tex. 1995) ("Because of public policy, we . . . hold that plaintiffs who have been convicted of a criminal offense may negate the sole proximate cause bar to their claim for legal malpractice in connection with that conviction only if they have been exonerated on direct appeal, through post-conviction relief, or otherwise."); *Sharpe v. Turley*, 191 S.W.3d 362, 366 (Tex. App.–Dallas 2006, pet. denied) (plaintiff illegally took documents from dumpster, and so could not sue for fraud, conversion, or recovery of those documents); *Ward v. Emmett*, 37 S.W.3d 500, 502 (Tex. App.–San Antonio 2001, no pet.) (plaintiff, who had long-standing mental and behavioral problems and was eventually convicted of killing her mother, could not pursue claims against her health care providers; her injuries were deemed caused by her illegal conduct); *Dover v. Baker, Brown, Sharman & Parker*, 859 S.W.2d 441, 451 (Tex. App.–Houston [1st Dist.] 1993, no writ) (public policy barred recovery when plaintiff was a knowing and willful party to tax fraud which contributed to his injury).

sufficient limiting principles. The doctrine has proven especially difficult to apply against undocumented aliens.[24] But that criticism is hardly fair when negligence is the failure to use ordinary care as would a reasonable person. The law has proven that it can infuse real meaning into general concepts like ordinary care and reasonableness. No one argues that a motorist broadsided by a drunk driver should be prohibited from recovering because he was driving five miles an hour over the speed limit. Nor should the doctrine be used to resurrect outlawry for undocumented aliens. It is true that in the nineteenth century, the doctrine was used to deny recovery to persons injured while violating Blue Laws.[25] But if we were to discard every claim and defense that has been misused, there would be nothing left of the law. Properly applied, the doctrine serves the valuable purpose of promoting compliance with the law and should be retained.

When the purpose of a criminal law is to protect a plaintiff and his violation of that law is the direct cause of injury that would not have occurred otherwise, he should not be permitted to sue another. As Justice Brandeis observed in another context:

> The governing principle . . . is that a court will not redress a wrong when he who
> invokes its aid has unclean hands. . . . The court's aid is denied . . . when [the

---

[24] Brief of Amicus Curiae Texas Civil Rights Project in Support of Respondents. *Compare Carcamo-Lopez v. Doe*, 865 F. Supp. 2d 736, 766-767 (W.D. Tex. 2011) (citing the court of appeals' opinion in the present case to conclude that Texas' unlawful acts doctrine does not bar suit by an undocumented alien accidentally struck by a border patrol vehicle while crouching in the dark in vegetation near the bank of the Rio Grande River), *with Rico v. Flores*, 481 F.3d 234, 243-244 (5th Cir. 2007) (concluding that it was uncertain whether the Texas unlawful acts doctrine would bar suit for the wrongful death of undocumented aliens who died in a railcar while entering the country illegally against the person hired to help them or the railway), *and Fuentes v. Alecio*, Civil Action No. C-06-425, 2006 U.S. Dist. LEXIS 93013, 2006 WL 3813780 (S.D. Tex. Dec. 26, 2006) (dismissing action for the wrongful death of an undocumented alien who expired from heat exhaustion while entering the country illegally as barred by the unlawful acts doctrine).

[25] *See, e.g.*, *Bosworth v. Inhabitants of Swansey*, 51 Mass. 363 (1845) (barring an action by an injured plaintiff illegally traveling on a Sunday); *Hinckley v. Inhabitants of Pensobscot*, 42 Me. 89 (1856) (barring an action for injuries to a plaintiff's horse caused by a defective highway because plaintiff was illegally traveling during daylight hours on a Sunday).

plaintiff] has violated the law in connection with the very transaction as to which he seeks legal redress. Then aid is denied despite the defendant's wrong. It is denied in order to maintain respect for law; in order to promote confidence in the administration of justice; in order to preserve the judicial process from contamination.[26]

The unlawful acts doctrine was not abrogated by Chapter 33 and should remain part of the common law of Texas.

Finally, the doctrine has not been abrogated by Section 93.001. Section 93.001(a) states in pertinent part:

It is an affirmative defense to a civil action for damages for personal injury or death that the plaintiff, at the time the cause of action arose, was:

(1)     committing a felony, for which the plaintiff has been finally convicted, that was the sole cause of the damages sustained by the plaintiff; or

(2)     committing or attempting to commit suicide, and the plaintiff's conduct in committing or attempting to commit suicide was the sole cause of the damages sustained; provided, however, if the suicide or attempted suicide was caused in whole or in part by a failure on the part of any defendant to comply with an applicable legal standard, then such suicide or attempted suicide shall not be a defense.

One obvious problem, that a suicide victim can never be a plaintiff, can be cured by reading "plaintiff" to include a decedent's heirs and beneficiaries. The Court reads the statute not only to provide an affirmative defense, which it plainly does, but to confine the defense to the circumstances described. That interpretation renders the statute critically ineffectual and absurd because the defense cannot be used in wrongful death cases unless the decedent is convicted posthumously or the decedent lingers between injury and death long enough to be convicted. Since neither of those

---

[26] *Olmstead v. United States*, 277 U.S. 438, 483-484 (1928) (Brandeis, J., dissenting) (footnotes omitted).

things is likely to ever happen, the statute provides an affirmative defense in wrongful death cases . . . never.

Subsection (c) states: "In an action to which this section applies, this section shall prevail over any other law." This plainly preempts any law that *denies* an affirmative defense in the circumstances described but leaves undisturbed a law that provides the defense in other situations, as the unlawful acts doctrine does. For the statute to have the effect the Court ascribes to it, it should state: "It is an affirmative defense to a civil action for damages for personal injury or death that . . ." — strike "that" and instead read — "*only if* . . . ."

Even if the Court's interpretation of the statutory text were reasonable, apart from the statute's ostensible purpose and the interpretation's effect on the law in severely limiting the common-law unlawful acts doctrine, it is simply inconceivable that the Legislature intended in enacting Section 93.001 to make it easier for criminals to sue for damages caused by their own illegal acts. For this, the Court has no answer.

The Court's misinterpretation of Chapter 33 and Section 93.001 is patent in its effect on Texas law. Now a plaintiff cannot sue for breach of an illegal contract even if he himself was not at fault in the transaction, but a plaintiff directly injured by his own illegal conduct can sue in tort for damages.

The unlawful acts doctrine is not merely contributory negligence that can be compared with other fault in allocating responsibility for a plaintiff's injuries. Although it must not be misused, in appropriate cases the unlawful acts doctrine protects the integrity of the legal system. The doctrine has not been abrogated by either the comparative responsibility scheme in Chapter 33 or Section 93.001's affirmative defense. Because the Court does not agree, I respectfully dissent.

_____
Nathan L. Hecht
Justice

Opinion delivered: August 30, 2013